# A. W. Galbraith *v.* Philadelphia Company, Appellant.

*Eminent domain—Measure of damages—Expert testimony.*

The measure of damages for land taken under the power of eminent domain is the difference in value of the entire property or tract as a whole unaffected as it was before the taking, and as it is affected after the taking.

Expert testimony is not necessary to determine the value of the property. All persons familiar with the property who have formed an opinion are competent to testify as to its value.

An essential test of the competency of witnesses called to give an opinion in respect to the market value of land in condemnation proceedings is that they should affirmatively appear to have actual personal knowledge of the facts affecting the subject-matter of the inquiry. Such witnesses should have a sufficient knowledge of the market value of the land, estimated upon a fair consideration of the land, the extent and conditions of its improvements, its quantity and productive qualities, and the uses to which it may reasonably be applied, taken with the general selling price of lands in the neighborhood at the time.

In an action to recover damages for laying a pipe line the owner of the land who had lived upon it for ten or eleven years is a competent witness as to the extent and amount of the damage, and he may state that the land was ripe or right for building purposes.

A witness who had lived for fifty-one years within half a mile of the property under which a pipe line was laid, was well acquainted with the land, knew of the construction of the pipe line, and knew of sales of lands in the neighborhood, is a competent witness as to the value of the land.

In an action to recover damages for injuries caused by the construction of a pipe line, a witness may testify as to ridges and depressions left on the property in the construction of the pipe line.

A witness who states that he had lived for four years within half a mile of lands under which a pipe line was laid, but that he had no knowledge of sales of lands in the neighborhood, is not a competent witness to express an opinion as to the value of the land, or as to the amount of damages caused by the construction of the pipe line.

A witness in condemnation proceedings who testified that he had as good an idea of land in the county as the general farmer, and that he had examined the land as a viewer, is competent to testify as to the value of the land.

Where, on the trial of an action to recover damages for land under which a pipe line was laid, one of the viewers is called as a witness for plaintiff, and in answer to a question as to his opinion of the value of the land, states the amount which he had fixed upon when acting as a viewer, his answer is not responsive to the question, and the defendant would have a right to have his testimony stricken out.

The Superior Court will not consider an assignment of error based upon the admission of testimony, where the record shows that there was no objection or exception taken to the ruling of the court below.

In an action to recover damages for injuries to land caused by the construction of a pipe line, it is proper to exclude the evidence of an expert witness called for the purpose of showing the probable lasting qualities of the gas fields in the county where the land is situated, where there is no offer to show how the witness proposed to demonstrate the truth of his theory.

Where a trial judge materially misstates the testimony of witnesses the judgment will be reversed. It is incumbent upon the judge to exercise the greatest care and arrive at substantial accuracy in his comments on the testimony before the jury.

Argued May 11, 1896. Appeal, No. 9, April T., 1896, by defendant, from judgment of C. P. Armstrong Co., Sept. T., 1894, No. 35, on verdict for plaintiff. Before Rice, P. J., Willard, Wickham, Reeder, Orlady and Smith, JJ. Reversed.

Appeal from award of viewers. Before Rayburn, P. J.

At the trial it appeared that this was a proceeding to recover damages for injuries to land caused by the construction of a pipe line. The plaintiff testified that he had lived upon the land for ten or eleven years. He explained to the jury the quality of the land, the structures upon it and the character of the work of the defendant in laying its pipe line. He also testified as to the condition of the ground as it was left after the completion of the work. He was finally asked this question:

Q. What was the value of your farm there before this gas line went through it?

Mr. Buffington: That is objected to, the witness not having shown himself competent to answer the question.

The Court: He has testified he is the owner of the property. We will overrule the objection and give you an exception and sealed bill. [1]

The witness testified that the construction of the line made a difference of $1,000 in the value of his farm.

Plaintiff further testified as follows:

Q. Mr. Galbraith, how is the land through which this pipe line runs suited for building purposes—that is, for laying out in lots?

Mr. Buffington: The question is objected to as irrelevant.

The Court: Yes.

Mr. Patton: You can state if this farm is ripe for building purposes.

Mr. Buffington: The question is objected to as incompetent.

The Court: We will overrule the exception and give you an exception and sealed bill. [2]

Joseph Atkinson, a witness for plaintiff, testified that he lived for fifty-one years within half a mile of the plaintiff's land. He testified as to ridges and depressions on the land after the construction of the pipe line. He also knew of sales of land made in the neighborhood. He was finally asked this question:

Q. Have you taken into consideration the actual damage done to the surface in the construction of this line, including the injury to the fences and trees and the depreciation of the value of the farm as a whole by the entry and appropriation of Mr. Galbraith's land by this gas company,—what would you say the damage would be?

Mr. Buffington: That question is objected to as incompetent. The witness not having shown sufficient knowledge to answer the question.

The Court: We will overrule the objection and give you an exception and sealed bill. [3]

A. Why, if the property was my own I would not take $1,500 and have that there and have it in the shape it is in and keep it there, that is the condition the line is in, the condition of the buildings.

David Wallace, a witness for the plaintiff, testified as follows:

Q. Now you can state, Mr. Wallace, what the condition of it is as to ridges and depressions.

Mr. Buffington: That is objected to.

The Court: We think that is a little far distant from the time the trench had been dug and filled up.

Mr. Patton: We offer to follow it by testimony of Mr. Galbraith that he has not interfered with the route of the line since, that it has not been interfered with by any person since.

Mr. Buffington: That is objected to.

The Court: We will overrule the objection and give you an exception and sealed bill. [4]

Mr. Patton: You can state how the place is as to depressions and ridges.

A. Well, a proportion of the land is in ridges, and then there are places where it is kind of sunk low, you know.

Robert Miller, a witness for the plaintiff, was permitted under objection and exception to testify as to the value of the land. The substance of Miller's testimony is stated in the opinion of the Superior Court. [5]

Under objection and exception the testimony of L. W. Patterson was admitted as to the value of the land. [6]

When Thomas Patterson, a witness for plaintiff, was on the stand, he testified that he lived about a mile and a half from the land, and knew it nearly all his life. He stated that he knew the general value of the land as well as any other property. He was finally asked this question:

Q. Now, I wish you would state what was the actual damage done to the surface of this land of Mr. Galbraith's in the constructing of the line, including the injury to fences and the depreciation of the value of the farm as a whole by the entry and appropriation of this strip of land through this farm.

Mr. Buffington: The same objection to the same question to the last witness.

The Court: The same ruling. [7]

Mr. Patton: What would you fix the damages?

A. Well, if I was going to buy the land I could fix the damage; I would make at least $1,500.

When Thomas Montgomery, a witness for plaintiff, was on the stand he was asked this question:

Q. Mr. Montgomery, you have been a farmer in this county? A. I have been from my childhood. Q. You have owned a good deal of land in Armstrong county? A. I have had several pieces. Q. Did you at any time make a visit to this land in dispute? Did you at any time go over this land where this pipe line goes through? A. Yes, sir, I went there by order of court as a viewer. Q. Did you make an examination of the land down there? A. We looked over the land when the line went through, not over the whole farm. Q. But you looked through it when the line went through? A. Yes, sir, went over the ground. Q. Are you acquainted with the value of land in Armstrong county? A. Well, that is most too much; I have been about as much as many people; it is pretty hard for a man to be acquainted with the value of all the land in the county. Q. You

have a general idea of the market value of land? A. I think as good as the general farmer. Q. Now, will you state what in your opinion was the injury done to Mr. Galbraith's land by the depreciation of its value, of the farm as a whole, by this pipe line running through it? A. We made a written report of that——

Mr. Buffington: We object to the question as incompetent and irrelevant; the witness has not shown sufficient knowledge to justify his answering the question proposed.

The Court: We will overrule the objection and give you an exception and sealed bill. [8]

Mr. Buffington: Aside from the question he should be directed by the court to give his answer unbiased by any influence that rests in his mind from the view.

The Court: We will instruct the witness as you request. Mr. Montgomery, you have been asked the question in reference to the damage sustained by Mr. Galbraith's property on account of the pipe line passing through it. Now, we have been requested by counsel for the defense here to instruct you that in giving your answer you are not to be influenced in any way by the influence brought upon you or by any of the viewers or that occurred in your deliberations in the view.

Mr. Patton: Now, just state what Mr. Galbraith's damage was there, in your opinion.

A. Why, my opinion is that I made it $500, that is my best recollection and I won't be sure without having the paper whether I made that for running from the bend from the tow path through the farm, or whether that was through the farm and the part on the tow path separate. I could not answer that; I had thought they left a very dirty, mean job, and they ought to pay for it; if they had cleaned up the work and left it decent I believe I would not have made it so heavy.

Phillip A. Lloyd, a witness for defendant, was asked these questions:

Q. How long have you been in the gas business? A. Ever since the Philadelphia Company started, eleven years ago. Q. What has been your business with regard to pipe lines? A. The first year or two I laid the biggest lines to Murraysville; since then right of way and claim agent. Q. Have you been actively in the field during the eleven years? A. Contin-

364    GALBRAITH v. PHILA. CO., Appellant.

Statement of Facts—Charge of Court.    [2 Super. Ct.

uously.  Q. Going almost all the time?  A. In all counties contiguous to Allegheny.  Q. You have attended the settlement of claims for the company?  A. Yes, sir.  Q. Have come in contact with farmers and farms all along the line, building lots and everything?  A. Between eight and nine hundred of them.  Q. Are you familiar with the character of gas as to its lasting qualities in the field, what is the duration of gas fields?  A. Some fields hold out longer than others.  Q. Are you familiar with them?  A. Yes, sir, I am familiar with them.  Q. Just state what the character of the fields are.

Mr. Patton: What is the object of that?

Mr. Buffington: We want to show the probable lasting qualities of the Armstrong county field for which this pipe line was constructed.

Mr. Patton: It is objected to as incompetent and irrelevant and too indefinite.

The Court: If you can put a specific time on it which you use it we will let you show that.

Mr. Buffington: As an estimate for the jury, as a basis.  We propose to prove by Mr. Lloyd as an expert, the probable time which this easement will be used by the company.

Mr. Patton: It is objected to as incompetent and irrelevant and too indefinite.

The Court: We will sustain the objection and give an exception and sealed bill. [11]

The court charged in part as follows:

[Joseph Atkinson, another witness on behalf of the plaintiff, testifies that he has lived in the neighborhood there for fifty years, that he knows this land, that he knows the value of lands in the neighborhood, and he states that the damage to this property by reason of the pipe line going through it was $1,500.] [12]

[Robert Miller is called on the part of the plaintiff; he testifies to seeing the pipe line laid, as to the ridges, some places there was some ground piled up upon it—he gives you a description of that as far as he saw it; but he also testifies as to the value of the land and the damages; he states that he is acquainted with the value of land in the neighborhood, and that he estimated the damage which this plaintiff has sustained by reason of the company going through his land at the sum of $1,000.] [13]

[Thomas Montgomery, who had been one of the viewers in this case, comes upon the witness stand and describes what he saw there when he went over the land, where this pipe line was laid, and that he places the damage at $500.] [14]

[James B. Douglass, another of the viewers, is called, who states that he is acquainted with the value of lands in this county, that he was present upon the ground where this pipe line had been laid, and that he estimates or places the damages at $1,000.] [15]

[Dr. T. H. Allison, another of the viewers, is called; he testifies that the property was damaged to about the sum of $800. You will recollect what he stated as to the means by which he arrived at that estimate; it was on account of the proximity of the pipe line to the buildings, he said that was the basis upon which he places a considerable amount of this estimate of damages which he gives before you.] [16]

Verdict and judgment for plaintiff for $887.50. Defendant appealed.

*Errors assigned* were, (1–11) rulings on evidence, quoting the bill of exceptions; (12–16) above instructions, quoting them; (17) that the charge was misleading.

*Orr Buffington, H. L. Golden* with him, for appellant.—If a witness must know something of the matter to which his testimony refers before he is competent—if mere wild opinions are not to govern, the evidence of the witnesses should have been rejected.

Mr. Lloyd, an expert, should have been allowed to give his opinion as to the character of the gas fields and duration of the gas in Armstrong county as a means of assisting the jury to make a correct assessment of damages.

The court misstated the testimony of the witnesses. In cases of this character it is the well defined duty of courts charging the jury not only to carefully and accurately comment upon the evidence, but also to warn them against an excessive verdict.

*W. D. Patton, D. L. Nulton* with him, for appellee.—The market price can be proved from the knowledge and judgment of men acquainted with the property: Curtin v. R. R., 135 Pa.

20 ; Mewes v. Crescent Pipe Line Co., 170 Pa. 364 ; McGregor v. Gas Co., 139 Pa. 230.

The word "right" in the second assignment should be "ripe." It is a mistake of the stenographer as is self evident. The question was asked under the ruling of Wilson v. Equitable Gas Co., 52 Pa. 566, wherein it is held that "it is competent to show that land used as a farm is ripe for building improvements."

Mr. Montgomery was one of the viewers. He went along the line of the pipe line on the farm of the plaintiff. He owned a number of pieces of land and had a general idea of the market value of land. He came within the express ruling of Gorgas v. R. R., 144 Pa. 1, that one who had aided as a viewer in the case and has a general idea of market value may testify as to his opinion from his own observation while acting.

If there are slight inaccuracies in reviewing the facts and the errors are not called to the attention of the court before the jury retired there is no ground for reversal : Knapp v. Griffin, 140 Pa. 604.

OPINION BY WILLARD, J., July 16, 1896 :

The appellee is the owner of a tract of land in the township of South Buffalo in the county of Armstrong. The appellant is a natural gas company engaged in the transportation and sale of natural gas. In 1894 the appellant constructed a twenty inch pipe line through the property of the appellee a distance of one thousand and sixty feet. Viewers were appointed to assess damages and on an appeal from their award the case was tried in the court of common pleas of Armstrong county, and under instructions from the court the jury rendered a verdict in favor of the appellee for $887.50.

The first eleven assignments of error are to the action of the court, in admitting and rejecting the testimony of witnesses on the question of damages. The correct rule, as often stated in estimating the damages to land taken under the right of eminent domain, is the difference in value of the entire property or tract, as a whole, unaffected as it was before the taking and as it is affected after the taking. The first ten assignments raise the question of the competency of the witnesses whose testimony was admitted under objections upon the question of dam-

ages.  Before discussing the assignments, I propose to embody in this opinion the rules established by our Supreme Court in various decisions upon the question from Kellogg v. Krauser, 14 S. & R. 142, to Pennock v. Crescent Pipe Line Co., 170 Pa. 372.

" Upon a scire facias sur mortgage, the witness acquainted with the premises was asked his opinion of the value of the mortgaged premises.  The principal reason assigned by the plaintiff against this evidence was that an opinion of the value of land is not evidence, because it is not a fact.  It is certain that such opinions are every day received as evidence, although it is true that an opinion is not strictly a fact; and it is difficult to conceive how the value of land can be proved without them.  The witness may indeed prove the prices at which other lands in the neighborhood were sold; but that would not ascertain the value of the land in question, without a comparison between it and the land which was sold, as to quality; and quality is very much a matter of opinion.  It is a kind of evidence so commonly admitted without dispute or objection that I have no doubt of its legality."  TILGHAM, C. J., in Kellogg v. Krauser, 14 S. & R. 142.

" The measure of damages is to be determined by a comparison of values immediately before and immediately after the taking.  To enable a jury to determine this ' they are entitled to the benefit of the opinions of witnesses of skill and judgment, who have had opportunities to learn the value of the property in question.' "  WOODWARD, J., in Brown v. Corey, 43 Pa. 495.

" The market value of land is not a question of science and skill, upon which only an expert can give an opinion.  Persons living in the neighborhood may be presumed to have a sufficient knowledge of the market value of the property with the location and character of the land in question.  Whether their opinion has any proper ground to rest upon, or is mere conjecture, can be brought out upon cross-examination."  SHARSWOOD, J., in Penna. & N. Y. R. R. Co. v. Bunnell, 81 Pa. 426.

" Though the knowledge of a witness of the value of lands in the neighborhood may have rested solely upon a few purchases made by the railroad company, and from no other sales or purchases in the real estate market, he has some knowledge

upon which to base an opinion, and the value of that opinion is for the jury." GORDON, J., in Pittsburg & Lake Erie R. R. Co. v. Robinson, 95 Pa. 426.

"The estimate which a witness may make, it is true, is in some sense an opinion, but it is an opinion formed from actual personal knowledge of the facts affecting the subject-matter of the inquiry, and as a conclusion of fact, is admissible in evidence, from necessity, as the best evidence of which such a· question is ordinarily susceptible. In order therefore that a witness may be competent to testify intelligently as to the market value of land, he should have some special opportunity for observation, he should in a general way and to a reasonable extent, have in his mind the data from which a proper estimate of value ought to be made ; if interrogated he should be able to disclose sufficient actual knowledge of the subject to indicate that he is in a condition to know what he proposes to state, and to enable the jury to judge of the probable proximate accuracy of his conclusions. He may hesitate in making an estimate of the value, he may say he does not know certainly, but, after due deliberation, may be able to express an opinion, or come to a conclusion, the accuracy of which, under all the evidence, is, of course, wholly for the jury." CLARK, J., in Pittsburg, Virginia & Charleston Railway Co. v. Vance, 115 Pa. 332.

"A farmer living a few miles distant who has known a farm for forty years, seeing the greater part of it in passing and repassing upon the public road, has been upon it and at the buildings, and knows the general selling price of land in the neighborhood, is a competent witness as to the market value under the test laid down in Pittsburg, etc. Co. v. Vance, 115 Pa. 331 : " Curtin v. R. R. Co., 135 Pa. 20.

"Expert testimony is not necessary to determine the value of the property. All persons familiar with the property, who have formed an opinion, are competent to testify as to its value." WILLIAMS, J., in Jones v. R. R. Co., 151 Pa. 31.

"In condemnation proceedings a witness who has known the property for ten or fifteen years and knew of sales of like property in the neighborhood is competent to testify to the market value of the property condemned." McCOLLUM, J., in McElheny v. Bridge Co., 153 Pa. 116.

"An essential test of the competency of witnesses called to

give an opinion in respect to the market value of the land in condemnation proceedings, is that they should affirmatively appear to have actual personal knowledge of the facts affecting the subject-matter of the inquiry.   Such witnesses should have a sufficient knowledge of the market value of the land, estimated upon a fair consideration of the land, the extent and condition of its improvements, its quantity and productive qualities, and the uses to which it may reasonably be applied, taken with the general selling price of lands in the neighborhood at the time."   STERRETT, C. J., in Michael v. Crescent Pipe Line Co., 159 Pa. 99.

" A witness is competent to testify as to the damage caused by the construction of a pipe line across a farm, where it appears that he lived upon an adjoining farm and knew the one in question for over fifty years, knew the character and productiveness of its soil, the kind and quality of the improvements on it, the extent and sources of its water supply, and the prices at which lands in the neighborhood were held and the prices at which they had been sold prior to the construction of the pipe line and up to within six months of the trial; but one who has never seen the property, nor even been in its neighborhood and knew of but one sale in the neighborhood, is not competent for that purpose."   STERRETT, J., in Mewes v. Crescent Pipe Line Co., 170 Pa. 364.

"In an action to recover damages for injury caused by the location and construction of a pipe line across a farm, a witness is competent to testify as to the damage who has knowledge of the land, and has knowledge of the prices brought by other lands in the neighborhood which had pipe lines across them.

"A witness who was not on the ground when the work was done is not competent to testify as to construction damages caused in the laying of a pipe line:"   Pennock v. Crescent Pipe Line Co., 170 Pa. 372.

A. W. Galbraith was the owner of the land and had lived on it for ten or eleven years.   He was clearly a competent witness as to the extent and amount of the damage, and on the authority of Wilson v. Equitable Gas Co., 152 Pa. 566, it was not error for the witness to state that the land was ripe or right for building purposes.

Joseph Atkinson testified that he had lived within half a mile

of the property for fifty-one years, was well acquainted with the land, knew of the construction and knew of sales of land in the neighborhood. He was clearly competent under the ruling in Mewes v. Crescent Pipe Line Co., supra.

The testimony of David Wallace as to ridges and depressions left on the property in the construction of the pipe line, in connection with the testimony of the appellee, was admissible; it tended to prove the effect of the construction upon the property.

Robert Miller, a witness who was permitted to give his opinion on the question of damages, testified as to his knowledge of the premises as follows:

Q. Mr. Miller, where do you live? A. I live at Freeport. Q. How long have you lived there? A. A little over four years. Q. Do you know this property of Mr. Galbraith. A. Yes, sir. Q. How far do you live from it? A. Well, now I couldn't tell you the distance it is, not half a mile, I don't think. Q. Are you acquainted with the value of Mr. Galbraith's property there, and the property in the neighborhood? A. Property sells at various prices, as you sell to different parties; it is pretty hard to come to a value of it until you close the bargain with the man. Q. Are you acquainted with the value of the land in the neighborhood of Freeport, in the neighborhood of Mr. Galbraith's land? A. Well, no, there has not been much land sold there that I know of, neither do I know of any farms lately being sold close by. Q. Mr. Miller, will you state to the jury what damage was sustained by Mr. Galbraith by injury done to the surface and the construction of this line, including the injury to the fences and the depreciation of the value of the farm as a whole by the entry and appropriation by the gas company of this land? What in your opinion was the damage done?

Mr. Buffington: The question is objected to as incompetent and irrelevant for the reason that the witness has not shown sufficient knowledge.

The Court: If he is acquainted with the value of it, it will be all right.

Q. By Mr. Patton: Are you acquainted with the value of Mr. Galbraith's property? A. I answered that question. Q. Are you acquainted with it? A. Well, I say some parties would value it at more than others: you cannot know until you get

your purchaser; there has no farms been sold adjoining it that I know of. Q. Well, you know its value, do you, as well as other people would know it? A. Well, taking it as a piece as a whole I could not know what it was worth until I could know what it would sell for.

Mr. Buffington: We object.

Mr. Patton: Mr. Miller, what is the value of Mr. Galbraith's property in your opinion?

Mr. Buffington: That is objected to.

Mr. Patton: That is for the purpose and only for the purpose of showing that the witness knows the value of property.

Mr. Buffington: Objected to as incompetent and irrelevant, the witness not having testified to sufficient facts to show sufficient knowledge.

The Court: We will overrule the objection and give you an exception and seal a bill.

Mr. Patton: What, in your opinion, is the value of Mr. Galbraith's property now?

Mr. Buffington: That is objected to as irrelevant.

A. It is a hard question. Q. I am asking just your opinion of it. A. My opinion of it is that it might be sold for $150 an acre. From $100 to $150, just as you would get your buyer. Q. Now, Mr. Miller, will you answer my other question; what was the actual damage done to the surface of Mr. Galbraith's land in the construction of this pipe line, including the injury to the fences and the depreciation of the farm as a whole by the entry and appropriation of this land by the gas company?

Mr. Buffington: We make the same objection as made to the same question to the witness preceding the last witness.

The Court: We will make the same ruling and the same bill sealed.

Q. What is the damage done to Mr. Galbraith? A. I would suppose it was $1,000 damage and might be more.

The testimony of this witness should have been excluded. His opinion was formed on no sufficient knowledge of the property or its value, as his answers clearly demonstrate.

L. W. Patterson testified that he was well acquainted with the property, had known it all his lifetime and knew the value of land in the immediate vicinity. His testimony was properly admitted.

Thomas Patterson was clearly a competent witness. He testified that he knew the land and had been acquainted with it from boyhood, knew it all over, knew its general value as well as any other property. No bill appears to have been sealed to the exception taken to the admission of the testimony of this witness, but the language of the judge might have misled the appellant's counsel. In our view of the competency of the witness it is immaterial whether the answer of the judge was considered the sealing of a bill or not.

Thomas Montgomery, one of the witnesses, testified that he had as good an idea of land in Armstrong county as the general farmer. He examined the land as a viewer. We do not think the witness was incompetent to testify, but we do think his answer to the question as to the amount of damage was not responsive, and would have probably been stricken out had a motion to that effect been made.

To the testimony of James Douglass there was no objection or exception. The ninth assignment of error will therefore not be considered.

The testimony of Dr. T. H. Allison was not objected to on the ground of the incompetency of the witness; he was allowed to engage in a rambling conversation, and express his opinion on various irrelevant subjects, all of which was improper and undoubtedly would have been eliminated from the record had a motion to that effect been made to the court.

The appellant offered to show by Phillip A. Lloyd (a person of eleven years' experience in the natural gas business), the probable lasting qualities of the Armstrong county gas fields, for which the pipe line was constructed. Just how he proposed to show this was not stated, nor is it apparent from the record. The evidence was promptly and properly excluded.

In his charge to the jury the trial judge in commenting upon the testimony, told them that Joseph Atkinson had testified that he knew the value of land in the neighborhood and had stated on the witness stand that the damage to this property by reason of the pipe line going through it was $1,500. Unfortunately the testimony of Mr. Atkinson as reported did not warrant the judge in his statement. Mr. Atkinson did not so testify. In long trials the jurors are apt to forget the testimony of witnesses. They are not as apt however to forget the words of the judge

delivered to them just before retiring to their room for con-sultation, and it is to be regretted that the testimony of Mr. Atkinson was incorrectly stated to the jury. It was a serious error and will have to be corrected by another trial of this case. Equally erroneous was the statement of the judge in his charge to the jury as to the testimony of Robert Miller, Thomas Montgomery, James Douglass and Dr. T. H. Allison. These witnesses did not testify according to the reported testimony as stated by the judge in his charge. The statement tended to and doubtless did prejudice the appellant's case in the court below.

Jurors not only take the law from the court, but when the testimony of the witnesses is commented upon, as in this case, they naturally rely to a great extent upon every word uttered by the trial judge and take his version of the testimony. It is incumbent upon the judge to exercise the greatest care and arrive at substantial accuracy in his comments on the testimony before the jury. We do not think the general charge open to the objections contained in the last specification of error. The fifth, twelfth, thirteenth, fourteenth, fifteenth and sixteenth assignments of error are sustained. The others are all overruled.

The judgment is reversed and a venire fa ias de novo awarded.