## Lefevre's Estate.

*Decedents' estates—Legatees—Settlement of contest between legatees— Transfer inheritance tax—Bequest for care of burial-lots—Act of July 12, 1923.*

1. Where certain sisters and legatees of a testator in a compromise settlement of a contest with his son, who was entitled to all of the estate outside of these legacies, assigned to him their legacies for $1600 less than their amount, the transfer inheritance tax of 10 per cent. accrued against the sisters' entire legacies immediately on the death of the testator, and was not reduced by the assignment.

2. There is a difference as to the tax liability, where a compromise is made by legatees with other legatees or with intruders, volunteers or outside claimants whose reduction of the estate may be considered as in the nature of an administration expense.

3. Under the Act of July 12, 1923, P. L. 1078, a bequest in trust for the care of a family burial-lot is exempt from taxation only when the entire bequest goes for the upkeep of the burial-lot, and is taxable where it provides that, after what is required for that purpose, the balance is to go to the cemetery.

Exceptions to adjudication. O. C. Lancaster Co., April T., 1925, No. 90.

*John A. Coyle*, for accountant and exceptions.

*M. E. Musser*, for Commonwealth.

SMITH, P. J., Jan. 6, 1927.—Exceptions have been filed to the distribution in this estate. At the audit, no witness was called in support of exceptant's contention, but counsel made a statement. When such statements are made with the approval of contending parties, as was here the case, they are accepted as admissions, and facts thus submitted are believed to have been stated with more dependable care and accuracy than often comes from the witness-stand.

The testator bequeathed $1200 to each of his four sisters (quoting from the

## Lefevre's Estate.

statement) : "They accepted $720 each in payment of this legacy. The pertinence of that matter is the question of tax. The entire estate outside of these legacies goes to a son—his share would be taxable at 2 per cent. The tax on these legacies to collaterals would be at a different rate. I contend that the tax should be on the sum of $720, the actual amount paid to them, and the actual amount which they did receive in full satisfaction of these legacies. There were reasons for it; the title to the property was involved. The wife of the testator and mother of this young man who gets the whole estate owned the property. At the time of her death, and when this son was just barely twenty-one years of age, the father had him make a deed to him for the property. After having a deed to the property, during his life he encumbered the property to a considerable extent and then made a will giving $4800 to his sisters. When he died and this will was probated, a bill in equity was prepared to have the deed set aside, which would have left him no estate. The matter was finally settled by the payment of $720 to each of these sisters in payment of their legacies. For this amount I think the tax ought to be on the amount they actually get."

Following this, an assignment was offered, of which the following is a copy:

"Know all men by these presents, that we, and each of us, Sarah B. Lefevre, Eliza B. Lefevre, Martha B. Lefevre and Emma B. Lefevre, do hereby assign, transfer and set over to ———, his administrators, executors and assigns the legacies of Twelve Hundred Dollars ($1200.00) given and bequeathed to each of us by the last will and testament of David B. Lefevre, late of Ephrata Borough, deceased, together with all interest to become due.

"Witness. our hands and seals this 15th day of February, A. D. nineteen hundred and twenty-six (1926).

|  | "Sarah B. Lefevere | (Seal) |
|---|---|---|
| 'Witnesses: | Eliza B. Lefevre | (Seal) |
| Wm. R. Harnish | Martha B. Lefevre | (Seal) |
|  | Emma B. Lefevre | (Seal)" |

It will be seen that a space intended for the name of the assignee or transferee is blank and that no consideration is mentioned, not even does there appear the common form of "for a valuable consideration." It was further stated, in argument, that the actual consideration to each sister was $800, but that $80 had been retained to meet the transfer tax of 10 per cent. on that amount, and that William J. Lefevre's name may be taken as if filling the blank space. It is argued that the payments were made to the sisters in pursuance of a compromise, and, therefore, the exceptions ought to be sustained, chiefly on the authority of Pepper's Estate, 159 Pa. 508; Kerr's Estate, 159 Pa. 512, and Hawley's Estate, 214 Pa. 525. It was the Collateral Inheritance Tax of May 6, 1887, P. L. 79, which engaged the attention of the court in these cases, but the relations between that act and the Transfer Inheritance Act of June 20, 1919, P. L. 521, and its supplements, are of such likeness as to make the reasoning in the former adaptable to the latter. One of the differences between those cases and the present one is the difference between no tax under the collateral act and a tax at the minimum rate under the Transfer Inheritance Tax Act, and in that it differs also from Taber's Estate, 257 Pa. 81, where it was held, notwithstanding there had been a compromise, the collateral tax was owing.

Conceding that there has been a compromise, there is a marked difference between those cases and this one in what seems a material feature. There the compromise was effected between beneficiaries under the will and intruders, or "volunteers," as Judge Penrose has distinguished such. Here it is between

Lefevre's Estate.

legatees under the same will. As the tax is imposed "upon the transfer of property passing from a decedent," and as there is no transfer of property passing from a decedent to an intruder, or that by which such intruder may reduce the estate, the tax has not been imposed. The act provides that parts of an estate which are not transferred by passing from the decedent are released from the tax, as in the case of debts and administration expenses. If an intruder, by acts that would seem to lead to prolonged and expensive litigation, effects a compromise, it may be justified as an expedient measure and the cost likened unto administration expenses.

In Kerr's Estate, 159 Pa. 512, Judge Penrose said: "The allowance or compromise of their claims simply reduces the estate afterwards passing to volunteers, with the same effect as if the reduction had been caused by the payment of debts or as if the payment or surrender had been the result of a suit terminating in favor of the claimant." In Hawley's Estate, 214 Pa. 525, it was held that the amount paid in compromise of a claim was not unlike a settlement with a creditor, and, therefore, not subject to the tax.

It will be apparent that there is a difference between a case where legatees under the same will compromise their disputes and where one not recognized by a testator thrusts himself upon undesigning beneficiaries and interrupts the administration of an estate. There seems to have been an arrangement by mutual concessions amongst these legatees, resulting in the four sisters each assigning to William J. Lefevre, the exceptant, their respective legacies in consideration of $800. The question is how much tax is due on account of these legacies: the sisters being collaterals, theirs are subject to a tax of 10 per cent.; the assignee, a son of the testator, being a lineal, a tax of only 2 per cent. is imposed on legacies to him. He bought their legacies for $1600 less than their value. Is this sum subject to a tax of 10 per cent. or 2 per cent.? The answer is obvious. The instant the testator died, the amount of these legacies passed from him and was transferred to the legatees subject to the payment of a transfer tax of 10 per cent. They sold their interest in these legacies to William J. Lefevre. What did he get? Certainly not more than the legatees had to sell, which were legacies aggregating $4800, subject to the payment of a tax of $480. This encumbrance was just as securely fixed as would be the lien of a mortgage on real estate purchased subject to the mortgage.

In Frank's Estate, 28 W. N. C. 323, 20 Phila. 128, Hanna, P. J., said: "The tax accrues immediately upon the death of the testator or intestate. And payment cannot be evaded by a conveyance or assignment to one whose right of succession is not subject to the tax. A devisee or legatee may waive all claim and refuse the bounty of a testator or to share as a distributee, but if he be a collateral heir or stranger to the blood of testator, the tax remains due and payable."

The language of Judge Gest in his exhaustive opinion in Paul's Estate 1 D. & C. 231, is: "Of course, a legatee may renounce his legacy, but the very fact of renunciation implies that he has something to renounce. Had he assigned it, of course the assignee would take subject to the Commonwealth's right to the tax."

It was found that William J. Lefevre owed $160 on account of transfer tax and there appears to be no reason why that finding should not stand.

Exception is taken to the award of tax on the following bequest: "Third I give and bequeath Two Hundred Dollars to the Trustees of Bowman's Cemetery, in trust, they to invest the aforesaid sum and use as much of the interest as is required for the upkeep of our burial lot, graves and tombstones. The balance to be for the benefit of the said Bowman Cemetery."

### Lefevre's Estate.

The Act of July 12, 1923, P. L. 1078, provides that: "In ascertaining the clear value of such estates, the only deductions to be allowed from the gross values of such estates shall be the debts of the decedent, reasonable and customary funeral expenses, bequests or devises in trust, in reasonable amounts, the entire interest or income from which is to be perpetually applied to the care and preservation of the family burial-lot or lots." Evidently the testator contemplated that there would be a balance after there had been proper expenitures for the upkeep of his burial-lot, and such balance is not exempt from the tax. A bequest for the upkeep of one's burial-lot is not subject to the tax, but the testator has infested this part of the bequest with a devastating germ by dedicating the "balance" to a use not free from the tax, and thus has destroyed the privilege conferred on bequests to be used entirely for the care of family burial-lots. As the mixing of a noxious ferment with pure water will make the whole solution poisonous, so will the mixing of taxable uses with a bequest for the upkeep of family burial-lots unfit the whole bequest for tax exemption. The testator has so scrambled the restricted with the unrestricted as to have put the legacy in a class which has no immunity from the tax.

The conclusion at which we have arrived is consistent with Long's Estate, 2 Pa. Superior Ct. 370, and not inconsistent with Lewellen's Estate, 22 Dist. R. 80. It is not necessary, as in the latter case, to search for an interpretation of the word "family" or devise a means of enlarging the testator's family so as to include a father's and by so doing join his distant burial-lot with testator's "own" lot that it may escape the tax, for in the present case the balance is for the benefit of Bowman's Cemetery.

The exceptions are dismissed and the adjudication is confirmed absolutely.

From George Ross Eshleman, Lancaster, Pa.