Syllabus.

ELIZA I. CURTIN ET AL. v. NITTANY V. R. CO.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS
OF CENTRE COUNTY.

Argued April 23, 1890—Decided May 12, 1890.

[To be reported.]

1. In the assessment of damages for land taken or injured in the exercise of the right of eminent domain, the market value of the property, before and after the injury, cannot be ascertained by evidence of particular sales, under special circumstances, of other properties alleged to be similarly situated.

2. It is competent to adduce testimony as to all matters bearing upon the location, condition and quality of the land in question, and show the general selling price of land in the neighborhood, as data from which the jury may determine the market value, but evidence of particular sales is not admissible.

(a) In a proceeding to assess such damages, the court charged that the market value of the land in question might be ascertained by sales of land adjoining, and, when there had been no public sales, from the opinion of men of experience and judgment who were acquainted with the property:

3. Such instruction could not be complained of by a party who brought out the only testimony, respecting particular sales, to which it could apply; but it was not erroneous, when, in view of the general tenor of the charge, the reference was plainly to the general selling price, and not to any particular sales.

4. If additional fencing is made necessary by the location and construction of a railroad through a tract of land, the increased burden of fencing thus cast upon the land may be considered in assessing the owner's damages, but only so far as it depreciates the market value of the property.

(b) The local act of April 9, 1868, P. L. 779, makes it the duty of railroad companies in the counties to which it applies, to fence their roads, and in default thereof renders them liable for the value of any horses, cattle, sheep or swine injured in consequence of such neglect. It also imposes a pecuniary penalty for neglect to keep up the fences required:

5. Notwithstanding this act, a jury assessing land damages, in a county governed by it, may consider whether the construction of a railroad through a farm necessitates a change of internal or additional fencing, to render it convenient for use as a farm, and whether such necessity casts upon it a burden detracting from its market value.

6. A farmer, living a few miles distant, who has known a farm for forty years, seeing the greater part of it in passing and repassing upon the public road, has been upon it and at the buildings, and knows the gen-

Statement of Facts.

eral selling price of land in the neighborhood, is a competent witness as to market value, under the test laid down in Pittsburgh etc. Ry. Co. v. Vance, 115 Pa. 331.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS and MITCHELL, JJ.

No. 75 January Term 1890, Sup. Ct.; court below, No. 12 November Term 1887, C. P.

On August 27, 1887, the plaintiffs, Eliza I. Curtin and others, petitioned the court below for the appointment of viewers to assess damages alleged to have arisen from the location and construction, by the Nittany Valley Railroad Company, of a railroad upon and across a certain farm belonging to them. Viewers were accordingly appointed, who afterwards reported assessing damages to the plaintiffs in the sum of $3,800. On October 12, 1887, the plaintiffs appealed from the award, and thereupon an issue, in the nature of an action of trespass quare clausum fregit, to determine what amount of compensation, if any, the plaintiffs were entitled to receive from the defendant by reason of said location and construction, was framed by order of the court, the plaintiffs filing a declaration in the usual form and the defendant pleading not guilty.

At the trial on February 5, 1889, the following facts were shown:

The plaintiffs' farm, which was situated near to the borough of Bellefonte, contained about 402 acres. It was underlaid with iron ore, which the firm of Curtins & Co. had the right to mine and take out, paying to the plaintiffs as owners of the farm a royalty of twenty cents per ton. The railroad of the defendant was laid through the farm in an irregular line shaped somewhat like the letter S, so as to leave 34 acres of cleared land and 90 acres of woodland, to the south of it, and the remainder of the farm with the main buildings upon the northern side. Witnesses for the plaintiffs testified that in order properly to use the tract as a farm it would be necessary to fence both sides of the railroad, the amount of fencing required for that purpose being about one and one half miles.

The plaintiff called as a witness, Isaiah Struble, who testified as follows:

Q. Where do you live? A. I live near Zion, in Walker town-

Statement of Facts.

ship.   Q. What is your occupation?   A. Farmer.   Q. How long have you lived in that vicinity?   A. Since the year 1839. Q. Are you acquainted with this Curtin farm?   A. Yes, sir. Q. How long have you been acquainted with it?   A. I have been acquainted with it for the last forty years.   Q. To what extent have you been acquainted with it?   A. Well, I never was over the farm much, but I noticed the crops that were raised on there, especially while Mr. White lived on it.

Cross-examination:   Q. You say you noticed the crops that grew in the fields along the Fishing Creek road?   A. Well, you can see over the greater part of the farm from the Fishing Creek road.   Q. Have you been over the northern part of the farm and noticed the crops there specially?   A. No, sir; not very much over the part north of the railroad.   Q. Have you ever been up at the farm buildings?   A. Yes, sir; I have been to the old buildings.   Q. How often have you been there? A. I couldn't tell you how often; I have been there frequently.   Q. You say you were not over the whole northern part? A. Not over the whole northern part.

By the court: Were you acquainted with the market value of property in the neighborhood before this railroad was built? A. I don't know of much property having been sold in that neighborhood.   Q. Did you know the value of this property before this railroad was located there?   A. Nothing more than my own impressions.   I have only got that to go by.

Mr. Gephart: Do you know anything about sales of property in that neighborhood; do you know of any farms being sold there?   A. The farms that have been sold there didn't bring near their value.

By the court: Do you have such knowledge of this property that you know the general value of this land?   A. Well, I thought I did; yes, sir.

Mr. Gephart: We submit, your Honor, he is not such an expert as to the value of land in this immediate neighborhood as to qualify him to express an opinion as to the market value.

Mr. Orvis: State, Mr. Struble, if you know how this Nittany Valley railroad runs through this farm.   A. Yes, sir; I do know that.   Q. State what the effect of the location and of the construction of that railroad through the farm upon the value of the farm has been.

Statement of Facts.

Mr. Gephart: Defendant's counsel object to the witness answering the question, because from the preliminary examination he is not so acquainted with the market value of the land, in the vicinity of the property in question, as enables him to give an opinion as to how the market value is affected by the location of the road through the property.

By the court: As we understand the testimony of Mr. Struble, he is a farmer living in this same valley, several miles below the farm which is the subject of controversy in this case; that he has been acquainted with the farm for forty years, passing and repassing it coming to and going from Bellefonte; that he has been on the farm; that he has been on the northern part of it, at the buildings, and he states that he has a general knowledge of the value of the farm; he is not called as an expert, but to state the value of the farm from his knowledge, and the injury it has sustained by reason of the location of this road. We think that he is competent to testify, and therefore admit the evidence; exception.[4]

The witness then testified that in his judgment the farm was depreciated in value in consequence of the building of the railroad through it, and placed an estimate upon the amount of the depreciation. Other witnesses testified for the plaintiffs to the same effect. Some of the plaintiffs' witnesses were interrogated by the defendant's counsel, upon cross-examination, respecting sales of other lands in the neighborhood, such examination bringing out the fact that an adjoining tract known as the Bernhart farm had been sold at a public sale, within two years, for $50 per acre, and that a small piece of land, part of what was known as the McAllister farm, adjoining the borough of Bellefonte, had sold at $200 per acre.

The defendant put in evidence the local act of April 9, 1868, P. L. 779, making it the duty of every company owning or operating a railroad in the county of Centre, to erect and maintain a fence five feet high on each side of its tracks, except in villages, boroughs and cities, and at public road crossings, and to construct and maintain suitable cattle guards at all crossings; and providing that, upon neglect or refusal to perform this duty, the company so offending should be liable to the owner of any horses, cattle, sheep or swine injured upon its road, for the full value thereof, and liable further, to a

Charge of Court below.

penalty of $50 for each place where the fences required by the act were destroyed or broken down and permitted so to remain for a period of ten days, to be recovered in a qui tam action.

At the close of the testimony the court, FURST, P. J., after stating the case generally and reading § 11, act of February 19, 1849, P. L. 83, proceeded to charge the jury as follows:

You will notice by the reading of the act of assembly that you are to compare the advantages with the disadvantages, and thereby ascertain what damages, if any, the owner of the land has sustained. Now, to make this comparison of the advantages with the disadvantages, the Supreme Court have defined just what the duty of a jury is, and what advantages are to be considered and what disadvantages are to be considered.

[Before calling your attention to the rule given by the Supreme Court, let me say to you, that the first important inquiry is to ascertain the market value of the property immediately before the injury was inflicted upon it, or before the location and construction of the road. Wherever it can be ascertained by public* sales of lands adjoining, the market value may be ascertained in that manner; where there have been no public sales, the market value must be ascertained from the knowledge and judgment of men who are acquainted with the property, and who by their experience and judgment can give the jury a fair, honest, and impartial opinion as to the real value of the property.][1] By these means you obtain the market value of the property immediately before the construction of the road; and after that is done, you determine, as the second inquiry, what is the market value of the property immediately after the construction of the road; the difference, if any, will constitute the true measure of damages. . . . . .

You will therefore consider the advantages that are special to the property itself, over and above the general advantage that is derived from the location of the railroad through the community; you ascertain what those advantages are, and you set over against that the disadvantages that this property is subjected to. These are the advantages and disadvantages that

---

* The word "public" was in the printed charge, but omitted from its place in that part copied in the assignment of error.

Charge of Court below.

you must make a comparison between, the one with the other; advantages that are special and disadvantages that are actual. You will apply these rules to the present case.

The plaintiffs allege that by the construction of the road over this farm there are from five to five and a half acres appropriated, the entire use of which is lost to the plaintiffs. The plaintiffs further allege that it is located in such a manner as to cut off some thirty-four acres of tillable land from the farm, in addition to the timber land; that it leaves that part of the farm in a very irregular shape, inconvenient for farming, and that, as to the northern portion of the tract, it leaves the southern boundary of it irregular and difficult to farm. The plaintiffs further allege that there is a great inconvenience arising out of the difficulty of crossing the line of this road; that it is located in a peculiar manner over this farm, along hillsides and over ravines, and that by reason of this it is rendered difficult to cross, thereby subjecting plaintiffs to great inconvenience and loss in the proper enjoyment of their farm. The plaintiffs further allege that it disarranges some of the interior fences of the farm, and that by virtue of the peculiar location of the road through this farm, deep cuts and high fills, that it necessitates additional fencing along the line of the road to render it safe and convenient for farming.

In ascertaining the value of the property you must take into consideration the evidence as to its location, and with it the evidence of its general nature and character. Not only is it shown to be a farm tract, but it is also shown to be a mineral tract; that quantities of iron ore have been discovered upon it; that ore works have been erected there and have been in operation for years. . . . . .

[Another element of damages which the plaintiffs claim in this case is that of fencing; not, as we understand the plaintiffs' claim, for any particular sum of money to be expended for fencing that part of the road, but the plaintiffs allege that by reason of the peculiar location of this road over the plaintiffs' land, there is an absolute necessity to fence this road, in order to conveniently farm the place, and to protect the stock and property on the place; that this is a burden cast upon the farm which detracts from its market value. It is only in the sense that it may detract from the market value of the property that

Charge of Court below.

you may consider it. You do not consider it as so much money for so many panels of fence, but you consider whether or not additional fencing is made necessary by this location of the road, and whether or not this casts a burden on the farm which detracts from its market value, and just to the extent it detracts from its market value, to that extent only you consider it in estimating the damages.] [2]

[In this connection the defendant has submitted a point, which it is made our duty to read to you and answer. The point is as follows :

Inasmuch as the special act of assembly for Centre county, approved April 9, 1868, P. L. 779, provides :—" That it shall be the duty of each company owning or operating a railroad in the county of Centre, to erect, where not already erected, and to keep and maintain on each side of the track or tracks of said road, at all places in said county, except where said road or roads passes or pass through a village, borough, or city, or a public road crosses the same, a suitable fence five feet high, and to build, erect, and maintain such suitable cattle guard or guards at all crossings on said railroad, as will prevent horses, cattle, sheep, and swine from going upon said tracks ; and in case any company, owning or operating said road or roads, shall refuse or neglect to perform the duties herein imposed, the company or companies so offending shall be answerable to the owner or owners of any horses, cattle, sheep, or swine to the full value of the property injured upon said road or roads, in consequence of such neglect ; "—the jury cannot allow as an element of the damages suffered by the plaintiffs the cost of erecting a fence on both sides of said railroad for the purpose of keeping the cattle of the owners, tenants, or other parties from straying upon the railroad and preventing such cattle from being killed or injured.

Our answer is as follows : The cost of fencing cannot be recovered as a distinct item of damages, but the question of how much the burden of fencing will detract from the value of the land may be considered by the jury. If the location of the road through the farm be such as necessitates a change of internal fences or necessitates additional fencing, either along the line of the road or elsewhere upon the farm, so as to render it convenient for use as a farm, and if the jury believe

from the evidence that this casts a burden upon the farm which detracts from its market value, then it is a proper subject to be considered by the jury; but it is to be considered in comparison with the advantages, if any, only as affecting the market value of the land.   We think this is a true rule, notwithstanding the special act of assembly relating to this county.   For further answer we refer to our general charge upon that subject.] [3]

In determining the market value of this property, both before the construction of the railroad and since, you are not bound by the opinions of witnesses who testified as to what, in their judgment, the market value of that property is.   The opinion of a witness is based upon facts, and before a witness was permitted to testify as to his opinion, he was required to give to you the facts upon which he predicates his opinion; you have the facts upon which his opinion was based and you can draw your own opinions and conclusions from the same facts.   You may differ in your opinions from the witness as to the amount or value of the property.   In this case the witnesses have differed widely in their opinions; some may have placed the value of the property, perhaps too high,—we do not say they have,—and we say, perhaps others may have placed it too low.   You have not only heard their testimony in this case, but you have been permitted to go upon the ground and view the premises.   You must gather from all the evidence in the case what was the true market value of this property immediately before the construction of this road.   You must then determine what was its true market value after the road was constructed upon it, and the difference would be the true measure of damages in this case.   In making up that difference we have already called your attention to the specific elements which may enter into it, and it is not necessary for us again to repeat these. . . . . .

The verdict of the jury was in favor of the plaintiffs for $6,162.66.   Subsequently, a rule for a new trial was discharged upon condition that the plaintiffs within twenty days remit all the verdict in excess of $5,628.   Within the time limited the plaintiffs filed a remittitur as specified in the order, and judgment was entered in favor of the plaintiffs for $5,628; whereupon the defendant took this appeal, assigning for error:

1–3. The parts of the charged embraced in [ ] ¹ ᵗᵒ ³

4. The admission of the plaintiffs' offer.⁴

*Mr. J. W. Gephart* (with him *Mr. John M. Dale*), for the appellant:

1. The court erred in the rule it laid down to govern the jury in ascertaining the market value of the property. That rule was the very reverse of the one established by a long line of decisions by this court. The court practically confined the test of value to "sales of land adjoining," which necessarily means particular sales, and not the general selling price in the vicinity. The charge left the jury to consider as evidence of the highest importance, what has been held utterly inadmissible. Market value cannot be shown by evidence of particular sales of alleged similar properties : Searle v. Railroad Co., 33 Pa. 57 ; Pittsburgh etc. R. Co. v. Patterson, 107 Pa. 461 ; Pittsburgh etc. Ry. Co. v. Vance, 115 Pa. 331.

2. In substantially holding that the special act of April 9, 1868, P. L. 779, requiring all railroad companies to fence their roads in Centre county, made no change in the measure of damages, and that the jury could consider the item of fencing just as if that act was not in force, the court committed error to the great injury of the defendant. The effect of the ruling is to compel the defendant to pay the cost of fencing the road as part of the damages for right of way, and, after so doing, still to remain bound to keep up the fence. This is neither right nor just; nor was it the intention of the legislature to impose such a double burden on the company. The duty of fencing is made imperative by the act, and the burden is shifted from the landowner to the railroad company.

3. The preliminary examination of Isaiah Struble showed that he was not sufficiently familiar with the entire property in question, and the market value of land in the vicinity, to render him competent to give an opinion as to the amount of damages. The very language used by Mr. Justice CLARK, in Pittsburgh etc. Ry. Co. v. Vance, 115 Pa. 332, can for the most part be applied to this witness. There can be very little · doubt that a very considerable part of the verdict is due to the testimony of incompetent witnesses like Struble, and to the instructions of the court upon the subject of evidence of par-

ticular sales and the question of the defendant's liability for a fund to erect and keep in repair fences along its road.

*Mr. John H. Orvis* (with him *Mr. C. M. Bower* and *Mr. Ellis L. Orvis*), for the appellees:

1. The sentences of the charge which are the subject of the first assignment of error, contain a severely accurate statement of the law, even when separated from the context. The market value of a thing is what it sells for in market. But it is not fair to consider extracts from the charge by themselves. In other parts of this charge the rule is laid down so fully and accurately, that the jury could not have been misled by the language assigned for error, even if it had been an inaccurate statement of the rule. If there is any error in that part of the charge, the defendant's counsel are responsible for it, as they brought out the testimony respecting particular sales, and the plaintiffs alone have the right to complain, as they alone are injured by it.

2. The necessity of fencing is still a burden on the owners of farms in Centre county, notwithstanding the local act of April 9, 1868, P. L. 779. A fence along the railroad is needed for other purposes, besides the prevention of the owner's cattle from straying upon the road and getting killed, and if the railroad company does not choose to build a fence, the farmer must protect his crops by doing so himself. The question whether additional fencing was made necessary by the location and construction of the railroad, was properly submitted, and the jury received proper instructions as to the manner in which they should deal with this item of fencing: Montour R. Co. v. Scott, 11 W. N. 51; Pittsburgh etc. Ry. Co. v. McCloskey, 110 Pa. 436.

3. The remedy for the hardship complained of in the argument for the defendant, in connection with the matter of fencing, is simple and easy of application. Let it in good faith obey the law, by fencing its road and putting in the necessary cattle guards, and then it will neither have to pay for any cattle killed by its cars, nor will it encounter the question of fencing as an element in the computation of the land damages. As to the admission of plaintiffs' offer, if Isaiah Struble was not a competent witness, it will be difficult to find witnesses

in a case like this. It is not necessary, to render a witness competent, that he should have gone over the land field by field, and acre by acre. All that the decision in Pittsburgh etc. Ry. Co. v. Vance, 115 Pa. 332, means is, that a person not acquainted with a property is incompetent to give an opinion as to its value.

OPINION, MR. JUSTICE CLARK:

In the assessment of damages for land taken or injured by a railroad company, the rule is now well settled in Pennsylvania that the market value before and after the injury cannot be ascertained by evidence of particular sales, under special circumstances, of other properties alleged to be situated similarly to the property in question: Pittsburgh etc. R. Co. v. Patterson, 107 Pa. 461. In the case cited, we said: " The selling price of lands in the neighborhood, at the time, is undoubtedly a test of value, but it is the general selling price, not the price paid for particular property. The location of the land, its uses and products, and the general selling price in the vicinity are the data from which a jury may determine the market value. The price which, upon a consideration of the matters stated, the judgment of well-informed and reasonable men will approve, is the market value. A particular sale may be a sacrifice compelled by necessity, or it may be the result of mere caprice or folly; if it be given in evidence, it raises an issue collateral to the subject of inquiry, and these collateral issues are as numerous as the sales." To the same effect is Pittsburgh etc. Ry. Co. v. Vance, 115 Pa. 331. It is competent to adduce evidence upon all matters bearing upon the location, condition, and quality of the land in question, and evidence of the general selling price of land in the neighborhood, but evidence of particular sales is not admissible.

But we do not understand the learned judge of the court below, in his charge to the jury, to have impinged upon this rule. He says: " Before calling your attention to the rule given by the Supreme Court, let me say to you, that the first important inquiry is to ascertain the market value of the property, immediately before the injury was inflicted upon it or before the location and construction of the road. Wherever it can be ascertained by sales of lands adjoining, the market

value may be ascertained in that manner; when there have been no public sales, the market value must be ascertained from the knowledge and judgment of men who are acquainted with the property, and who, by their experience and judgment, can give the jury a fair, honest, and impartial opinion as to the real value of the property."

The plaintiffs introduced no evidence of any particular sales; the defendants themselves, in their cross-examinations, did develop the fact that the Bernhart farm, adjoining these lands in question, had been sold at a forced sale, for $50 per acre, and that a small part of the McAllister farm, along the borough line of Bellefonte, had been sold at $200 per acre. For the introduction of this evidence the defendants are solely responsible, and apart from this, there was no evidence to which the remarks of the learned judge could apply. But it is plain, we think, not only from that portion we have quoted, but from the general tenor of the whole charge, that the reference of the court was to sales generally of adjoining properties, or, rather, to the general selling price in the neighborhood, and not to any particular sales. The language of this particular clause of the charge is fairly susceptible of this construction, and, taken in connection with the whole charge, we think is susceptible of no other. The learned judge, therefore, was quite right in saying to the jury that if there were no sales, that is to say, no sales from which the general selling price might be ascertained, the market value would be ascertained from the testimony of persons acquainted with the property, and who were able to speak from their knowledge and experience on this subject.

The only other assignment of error to the charge is to that part of it which relates to the alleged deterioration of the market value of the property, by reason of the increased burden of fencing. As to this the learned judge charged the jury with great clearness and accuracy, as follows: "Another element of damages which the plaintiffs claim in this case is that of fencing; not, as we understand the plaintiffs' claim, for any particular sum of money to be expended for fencing that part of the road, but the plaintiffs allege that by reason of the peculiar location of this road over the plaintiffs' land, there is an absolute necessity to fence the road, in order to conveniently farm

the place, and protect the stock and property on the place; that this is a burden cast upon the farm, which detracts from its market value. It is only in the sense that it may detract from the market value of the property that you may consider it. You do not consider it as so much money for so many panels of fence, but you consider whether or not additional fencing is made necessary by this location of the road, and whether or not this casts a burden on the farm which detracts from its market value, and, just to the extent it detracts from its market value, to that extent only you consider it in estimating the damages."

But the defendants have offered in evidence a special act of assembly, applying to the county of Centre, approved April 9, 1868, P. L. 779, which provides that it shall be the duty of each company, owning or operating a railroad within that county, to erect and maintain a suitable fence, five feet high on each side of their tracks, except where their road passes through a village, borough, or city, or at public road crossings, and to build, erect, and maintain such cattle guards, at such crossings, as will prevent horses, cattle, etc., from going upon the tracks; and, in case of the failure of any company to comply with this act, they are held " answerable to the owner or owners of any horses, cattle, sheep, or swine " for any injury inflicted in consequence of such neglect, to the full value of the property injured; and, if the fences so built are suffered to be destroyed or broken down, for a penalty of fifty dollars for each place where they are suffered so to remain for a period of ten days, etc.

The defendant's contention is that, inasmuch as by this act it is made the duty of the defendant company, under the penalties prescribed, to fence their tracks, erect cattle guards, etc., the burden of increased fencing was not a proper matter for the consideration of the jury in the adjustment of damages. To raise this question the defendants submitted a point substantially as follows: " That inasmuch as the special act of assembly for Centre county, approved April 9, 1868, provides, [reciting the act in extenso,] the jury cannot allow, as an element of the damages suffered by the plaintiffs, the cost of erecting a fence on both sides of said railroad, for the purpose of keeping the cattle of the owners, tenants, or other parties from straying upon the railroad, and preventing such cattle from being injured or killed."

The defendant was certainly entitled to an affirmative answer to this point, for in no aspect of the case, and under no circumstances, were the plaintiffs entitled to recover " the cost of erecting a fence on both sides of the railroad." Whilst the answer of the court is not affirmative in form, it contains, we think, a correct statement of the law. " The cost of fencing," says the learned judge, " cannot be recovered as a distinct item of damages; but the question of how much the burden of fencing will detract from the value of the land, may be considered by the jury. If the location of the road through the farm be such as necessitates a change of internal fences, or necessitates additional fencing, either along the line of the road, or elsewhere upon the farm, so as to render it convenient for use as a farm, and if the jury believe from the evidence that this casts a burden upon the farm which detracts from its market value, then it is a proper subject to be considered by the jury; but it is to be considered in comparison with the advantages, if any, only as affecting the market value of the land. We think this is a true rule, notwithstanding the special act of assembly relating to this county. For further answer, we refer to our general charge on this subject."

The point assumes, without proof, and without reason, that the only necessary purpose of a fence is " to keep the cattle of the owners, tenants, and other parties from straying upon the railroad, and to prevent them from being injured or killed;" and argues, from this assumption of fact, that, as the railroad company is held for the damages sustained in all such cases, the owner must rely upon the responsibility of the company, or bear the burden himself. But the learned judge took a different view of the matter; he submitted the question to the jury, whether or not the location of the road necessitated a change of internal fences, or additional fencing, either along the road, or elsewhere upon the farm, *so as to render it convenient for use as a farm,* and instructed the jury, if they should believe from the evidence that this necessity cast a burden on the farm, it was a proper matter for their consideration.

Although this special act declares the duty of the company to fence their tracks, and fixes the penalty for their neglect, non constat that they will perform that duty; and, if they do not, but pay the penalties provided, from time to time as they accrue,

### Opinion of the Court.

they may perhaps be held subject to no further responsibility under the act. But the absence of fences along the road involves other inconveniences and loss to the landowner than the mere killing or injuring of his horses, cattle, etc. Fences are required to protect his growing crops from the invasions of his own and his neighbor's stock, which may have access over the defendant's tracks; to prevent his own horses, cattle, etc., from straying from home and into the fields of his neighbors, and to keep them within easy and convenient bounds for use and service upon the farm. Besides, he may not choose to suffer the vexatious delays and uncertainties of the law, in recovering the value of his property, when he has a fair market more suitable for his interests and convenience. If the requirements of the statute were absolute, and the responsibility of the company commensurate with the injuries which might accrue, a different question perhaps would be presented. But as the company is held to fence the tracks only by virtue of the statute, and the measure of responsibility for neglect is particularly defined, it follows that no general responsibility exists; as to this, however, I speak for myself only; the question is not before us, and is therefore not decided.

The argument of the defendant's counsel is that it is unjust and unreasonable that the company should be held for damages upon the footing of this increased burden of fencing to the owner, and yet be held to the duty of fencing their road, under the penalties stated; but it must be conceded that it is equally unjust and unreasonable that the landowner, in order to have the convenient and ordinary use of his farm, should be subjected, by the act of the company, to the burden of increased fencing without compensation. The constitution and the laws of the state require that a railroad company, invested with the privilege of taking private property for public use, shall make just compensation for all property taken, injured, or destroyed in the construction of its road; and, whatever other duties are or may be enjoined upon the company by the legislature, this is the fixed measure of the company's responsibility. With the wisdom of the statute we have nothing to do; if it operates unjustly to the company, their appeal should be to the legislature. We are of opinion the learned judge ruled the defendant's point correctly.

The fourth assignment of error is without merit.   In order that a witness may be competent to testify intelligently to the market value of land, as we said in Pittsburgh etc. Ry. Co. v. Vance, supra, " he should have some special opportunity for observation ; he should, in a general way and to a reasonable extent, have in his mind the data from which a proper estimate of value ought to be made ; if interrogated, he should be able to disclose sufficient actual knowledge of the subject to indi-cate that he is in condition to know what he proposes to state, and to enable the jury to judge of the probable proximate ac-curacy of his conclusions."   But Mr. Struble, the witness, was a farmer, residing in the same valley ; he had known the pro-perty for forty years and upwards, passing and repassing it to and from Bellefonte, the county-seat.   The greater part of the land, he says, could be seen from the public road ; but he had been upon the land, had seen the buildings frequently, and thought he was sufficiently conversant with the selling price of lands in the neighborhood to give an opinion.   He seems to have had a general knowledge of the land by actual obser-vation of it ; and the value and effect of his testimony was for the jury.

Upon a careful examination of the whole case, we find no cause for reversal of this judgment.

The judgment is therefore affirmed.

