Henry Becker, Appellant, *v.* The Philadelphia & Reading Terminal Railroad Company.

[Marked to be reported.]

*Railroads—Eminent domain—Damages—Taking personal property— Profits of business—Constitutional law—Evidence.*

The constitution of 1874 made no change in the character of the property for which damages could be recovered when taken for public use. It merely enlarged the right of recovery from taking, to injury or taking. There can be no recovery for an actual or supposed loss of profits in a business carried on upon the premises, nor for taking personal property, unless it is taken as material used in construction. A common law action will lie for any trespass to personal property by taking or injuring it, but no damages can be recovered for it in condemnation proceedings.

In condemnation proceedings instituted by a railroad company, the pleadings were framed so as to raise an issue only as to the value of the

land taken. It appeared that no personal property was taken, and that the owner had ample time to remove his goods. The owner offered to show that he was carrying on the business of tailoring on the premises, that he had a large amount of merchandise purchased for his trade at this place, that by reason of the location of the railroad on his premises he could no longer carry on his trade there. He also offered to show the difference between the market value of his merchandise and fabrics in the store and their actual value if removed to some other place and applied to the same or some other use. *Held*, that there was no error in rejecting these offers of evidence; the removal of personal property cannot be considered as an item of damages in the taking of real estate.

*Eminent domain—Land damages—Interest.*

In condemnation proceedings it is not error for the court to charge the jury: " You are not entitled to give interest upon the damages, but you will remember that this property is taken as of May 14, 1891, and in estimating the amount of your verdict, if you find that there has been additional damage because of the lapse of time, you will add it to the amount of your verdict; but this is entirely a question for you." Klages v. R. R., 160 Pa. 386, followed.

*Eminent domain—Damages—Evidence as to sale of other properties in the neighborhood.*

The market value as a measure of damages for land taken or injured by a railroad company cannot be ascertained by evidence of particular sales of other properties alleged to be situated similarly to the one in question, as such evidence would introduce collateral issues. Such evidence may, however, be brought out by the cross-examination of witnesses.

Argued March 24, 1896. Appeal, No. 203, July T., 1895, by plaintiff, from judgment of C. P. No. 2, Phila. Co., March T., 1891, No. 1017, on verdict for plaintiff for less than claim. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and DEAN, JJ. Affirmed.

Issue to determine the value of premises 1114 Arch street, in the city of Philadelphia, taken for railroad purposes. Before PENNYPACKER, J.

At the trial plaintiff offered to show by his own testimony that he was the owner of the premises 1114 Arch street; that he was carrying on his business in that building, being that of a merchant tailor, and for the purposes of his business he had a large amount of merchandise, consisting of cloths and other fabrics, especially purchased for his trade at this place; that by reason of the location of the defendant's road plaintiff could no longer carry on his business, and in consequence of said loca-

tion said property was greatly injured and damaged; to show by the witness the difference between the market value of the merchandise or fabrics in the store, to be used on the premises, and what they would be worth to be removed and applied to the same or some other use.

Objected to. Objection sustained. Exception noted for plaintiff. [1, 2]

Plaintiff proposed to prove by his own testimony the efforts and advertising of this particular place as a merchant tailoring store, the trade which had been accumulated by reason of his efforts at this particular store, or custom to this particular place, for the purpose of enabling the jury to determine whether for this particular purpose this property was worth more for that particular purpose than any other.

Objected to. Objection sustained. Exception noted for plaintiff. [5, 6]

Plaintiff's point and answer were as follows :

7. You will find the value of the plaintiff's property as of May 14, 1891, and you may allow additional damages in the way of interest for the lapse of time as a compensation for the delay in payment, and you may take the ordinary rate of interest as the fair measure of such damage. *Answer :* I decline that point, having already instructed you in my general charge as to what the law is with respect to damage, because of the lapse of time, if there be any. [3]

Defendant's point and answer were as follows :

8. The prices of the premises, No. 1110, No. 1112 and No. 1125 Arch street, paid by the Finance Company for the railroad company, in March, 1888, are not evidence of general selling value of property in the neighborhood, and should not be taken by the jury as evidence of such general selling value. *Answer :* Affirmed. [4]

The court charged in part as follows :

[You are not entitled to give interest upon the damages, but you will remember that this property is taken as of the 14th day of May, 1891, and in estimating the amount of your verdict, if you find that there has been additional damage because of the lapse of time you will add it to the amount of your verdict, but this is entirely a question for you.] [9]

Verdict for plaintiff for $80,240. Judgment for $70,000, remittitur having been filed. Plaintiff appealed.

*Errors assigned* among others were, (1, 2, 5, 6) rulings on evidence, quoting the bill of exceptions; (3, 4, 8, 9) above instructions, quoting them.

*W. Horace Hepburn,* for appellant.—Property signifies the right or interest which one has in lands or chattels. In this sense it is used by the learned and unlearned, by men of all ranks and conditions. We find it so defined in dictionaries, and so understood by the best authorities: Morrison v. Semple, 6 Binn. 94.

The following cases would seem to give the clearest definition of the word " property," and are submitted as authority for the construction of the word " property," as found in the constitution: 1820, Jackson v. Housel, 17 Johns. 281, 283 ; Old Colony & Fall R. R. Co. v. County of Plymouth, 14 Gray, 155, 161 ; Chicago & Western Indiana R. R. Co. v. Englewood Connecting Ry. Co., 115 Ill. 375, 385 ; City of Denver v. Bayer, 7 Colo. p. 113 ; 1882, article by A. G. Segwick in the North American Review, vol. 135, p. 253 ; Hare's American Constitutional Law, p. 357.

" Taking " embraces not only that which was physically taken, but also the injury to that which remained : Eaton v. B., C. & M. R. R., 51 N. H. 504 ; 1874, Thompson v. Androscoggin River Imp. Co., 54 N. H., 545 ; 1872, Arimond v. Green Bay Co., 31 Wis. 316–335 ; 1872, Pumpelly v. Green Bay Co., 13 Wallace, 166 ; People v. Otis, 90 N. Y. 48 ; Conniff v. San Francisco, 66 Cal. 45.

Since the adoption of the constitution of 1874 there certainly can be no doubt that the citizen is entitled not only to the damage for the property " taken " but also the injury to that which remains, whether it be real or personal property : Getz v. Reading R. R., 113 Pa. 214 ; Ehret v. Schuylkill R. R., 30 W. N. C. 564 ; Kersey v. R. R., 133 Pa. 234 ; Ehret v. Schuylkill R. R., 151 Pa. 158 ; R. R. v. Eby, 107 Pa. 173 ; Price v. Milwaukee & St. Paul R. R., 27 Wis. 98.

While it is true that the prices paid for particular properties are not evidence of market value in Pennsylvania it is also true that counsel may, under cross-examination, examine witnesses as to prices paid for properties in the neighborhood, and when such is the case the jury becomes possessed of the facts forming

the basis of value in the minds of the experts, and they are evidence: Curtin v. R. R., 135 Pa. 20.

Upon the giving of the bond the right of way vests in the railroad company: Fries v. R. R., 85 Pa. 73; Gilmore v. Pittsburg R. R., 104 Pa. 281; Hoffman's App., 118 Pa. 512.

The instruction as to interest was erroneous: Richards v. Citizens' Gas Co., 130 Pa. 37; Brown v. Providence & Warren & Bristol R. R., 5 Gray, 35; Lewis on Eminent Domain, sec. 448.

*Thomas Hart, Jr.*, for appellee.—The overruling of the offer of the plaintiff to show the amount of the stock of merchandise which he had in his store, and which he alleged was injured and destroyed by the location of the railroad, was proper, the amount sought to be recovered being the difference in value of said stock used on the premises and removed therefrom and used elsewhere: Patent v. R. R., 14 W. N. C. 545; Duncan v. R. R., 111 Pa. 352; Lewis on Eminent Domain, sec. 53; C. P. R. R. v. Pearson, 35 Cal. 247; N. Y. C. & H. R. R., 35 Hun, 306; N. Y., W. S. & B. R. R., 35 Hun, 633; Ramlet v. Concord R. R., 62 N. H. 561; Edmonds v. Boston, 108 Mass. 535; Gibson v. R. R., 2 Drewry & Smale (Eng.), 603; Randolph on Em. Dom. sec. 241; Lewis on Em. Dom. sec. 263; Hammett v. Phila., 65 Pa. 146; Turnpike Road v. Brosi, 22 Pa. 29; North Pa. Ry. Co. v. Davis, 26 Pa. 238; Sch. Nav. Co. v. Thoburn, 7 S. & R. 411; R. R. v. Robinson, 95 Pa. 426; Finn v. Gas & Water Co., 99 Pa. 634; Pittsburg etc. Ry. Co. v. Patterson, 107 Pa. 461; Chambers v. So. Chester, 140 Pa. 510; R. R. v. Eby, 107 Pa. 173; Penna. R. R. v. Marchant, 119 Pa. 541; Morris v. Semple, 6 Binn. 94; Jackson v. Hensel, 17 Johns. 281; Old Col. & Fall River Rd. v. Plymouth, 14 Gray, 155; C. & W. I. R. R. v. E. C. Ry., 115 Ill. 375; Eaton v. B., C. & M. R. R., 51 N. H. 504; Reading v. Althouse, 93 Pa. 400; Brighton v. Church, 96 Pa. 331; Duncan v. Pa. R. R., 111 Pa. 352; R. R. Co. v. Walsh, 124 Pa. 544; R. R. v. Lippincott, 116 Pa. 472; Dooner v. Pa. R. R., 142 Pa. 36; McGee's App., 114 Pa. 470.

The prices paid by the railroad company for 1110, 1112 and 1125 Arch street are evidence of the general selling value of property in the neighborhood and defendant's point should have

been negatived: P. & W. R. R. v. Patterson, 107 Pa. 461; P., V. & C. Ry. v. Vance, 115 Pa. 325; R. R. v. Hiester, 40 Pa. 53; Lentz v. Carnegie Bros., 145 Pa. 612; Moore v. Smith, 16 S. & R. 388; Ins. Co. v. McMurdy, 89 Pa. 363.

The instruction of the court below that the jury could not give interest upon the damages, but in estimating the amount of the verdict they might, if they found there had been additional damage because of the lapse of time, add the same to the amount of the verdict was error: Klages Case, 160 Pa. 386.

OPINION BY MR. JUSTICE GREEN, October 5, 1896:

In this case the petition for the appointment of viewers set forth that the defendant had located its railroad, and that it was necessary to occupy certain land at its terminus, of which the plaintiff was the owner, and prayed the court to appoint viewers to ascertain the damages sustained by the plaintiff by reason of the occupation of his land for the purposes of the road. A description of the lot or piece of ground to be occupied was annexed. An issue was awarded by consent of the parties, " to determine the amount of damages which the said Henry Becker is entitled to in consequence of the entry upon, taking and occupation of premises No. 1114 Arch street, by the Philadelphia & Reading Terminal Railroad Company." It will be seen, therefore, that the sole question to be determined was, the damages sustained by the plaintiff, by reason of the taking of certain land belonging to him. No question as to the taking or injuring of personal property was within the terms of the issue, and hence no such question was on trial. As a matter of fact no personal property was taken or injured in any way, nor was there any proposition to take or injure that kind of property. The value of land taken was the only matter for trial, or which could be tried under the pleadings. Nevertheless the plaintiff now complains that he was not permitted to show that he was carrying on a business of tailoring on the premises, that he had a large amount of merchandise purchased for his trade at this place, that by reason of the location of the railroad on his premises he could no longer carry on his trade there; and he offered to show the difference between the market value of his merchandise and fabrics in the store and what they would be worth to be removed to some other place and applied to the same or

some other use. It was a very surprising offer of proof, and is the first of its kind of which we have any cognizance. We are referred to no authority in support of such an offer, nor do we know of any. There are plenty of reasons why such an offer cannot be entertained, and we cannot imagine any why it should be. It is enough to know that no such question arises or can arise, under the pleadings. It is the value of land taken that is to be inquired of and determined under the issue framed, not personal estate of any kind, not profits of business, nor any kind of injury to any stock of merchandise, nor whether a better business could be done with a particular stock of goods on these premises or on some other. No personal property was taken or injured, or touched or handled in any way. The plaintiff had ample time in which to remove his goods. He agreed with the defendant, after the bond was filed, in writing, to occupy the premises for a short time at a rental value, and that the defendant might enter at the end of that time if he had not then removed. He was allowed to prove every kind of injury and damage sustained by taking his property, and recovered an exceedingly large verdict, much larger than the total cost of the property, and four or five times as large as the amount at which it was assessed.

The new constitution made no change in the character of the property for which damages could be recovered. It merely enlarged the right of recovery from taking, to injury or taking. It was the taking of land only, that could be recovered for under the act of 1840, and up to the time of the constitution of 1874, and after that, it was the injuring or destroying, as well as the taking, that was to be compensated. But recovery for taking personal property unless it was as materials used in construction, was not recognized or provided for, by proceedings for condemnation, either before or after the constitution of 1874. Of course for any trespass to personal property by taking or injuring it, there was always a common law liability, but that is not this case.

We have so often said that the profits of business could not be recovered in condemnation proceedings that it seems like a waste of time to cite the decisions. As far back as Thoburn's Case, 7 S. & R. 411, it was held that, in estimating the damages done to the landowner, the jury are to value the injury to the

property at the time the injury was suffered, without reference to the person of the owner or the state of his business. The allowance of damages for an actual or supposed loss of profits in a business carried on upon the premises by reason of the taking, was most emphatically condemned in the opinion, and that decision has been followed by this court from that day to this. There, a real and serious injury was done to the plaintiff, as well to his business, as to his land. He owned a tract of seventy-one acres with a cotton mill on it near the river Schuyl-kill. His land was damaged by the backing of water from the defendant's dam, and his business was so impeded that he was obliged to remove it to another place, yet this court held he could recover nothing for the injury to his business, but only for the injury to his land just as it was at the time it was flooded. Damages were claimed not only for the land but also for the injury to the business. GIBSON, C. J., after stating that the compensation was to be the price of the privilege to swell the water to a particular height for an indefinite time, said, "Now this price was due the moment the privilege was entered upon, and the price could be ascertained; which was obviously the time when the obstruction was first completed. The jury were therefore to ascertain what was then due; and the amount, clearly, could not be enhanced, or in any way affected by subsequent injuries, the consequences of the obstruction. . . . But as the particular injury to the plaintiff in his business as a manufacturer was necessarily subsequent to the erection, and as the defendant prayed the direction of the court on the legal effect of the evidence relating to that part of the case, he was entitled to have it; 'for so far it would have operated in his favor. . . . It is evident that the profit in any branch of manufactures must mainly depend on the amount of capital invested, the number of workmen employed, and the extent of the business carried on." After stating the injustice of allowing for the profits of business to be carried on, the Chief Justice added, "That would make the defendant an insurer of ordinary profits in a new state of the business, pushed to a morbid extent, and would put it in the power of the plaintiff to increase the damages to any extent he might think proper. I mention this to show the danger of taking into consideration circumstances posterior to the time when the privilege is fully

entered on, and its consequences to the individual to be compensated are ascertained."

In the case of Searle v. Railroad Co., 33 Pa. 57, an effort was made to recover damages for the value of the coal lying under the surface of the ground taken for a railroad.  But we held this could not be done, and that the measure of damage must be the actual value of the land taken, and not the loss of profit which might be made by taking the mineral underneath it. LOWRIE, C. J., speaking of the rejection of an offer to prove that there was $4,000 worth of coal under the land, about one acre, said, " We do not measure the value of land by such facts. Land may have $4,000 worth of coal per acre in it, and yet sell at $40.00 per acre. . . . Moreover the offer impliedly requires a degree of refinement in the measure of values which seems to us totally incompatible with the gross estimates of common life.  Though we might have the most accurate calculation of the quantity of coal in the land, yet, without knowing exactly the expense of bringing it to the surface and carrying it to market, and the amount likely to be lost in mining and conveying and the times in which it would be brought out, and the market prices at those times, the quantity would not help us to the value of the land.  The gross estimates of common life are all that courts and juries have skill enough to use as a measure of value.  All other measures are necessarily arbitrary and fanciful."

And so here, the question whether or not the plaintiff's business, with the stock of goods on hand, could be carried on at a greater or less profit at some other place than on these premises is altogether speculative, remote, imaginary and uncertain.  No one can possibly have definite knowledge upon such a subject. It would depend upon contingencies, events and methods which are incapable of statement, appreciation or knowledge.  What one man might do at a profit, another might only do at a loss. What this plaintiff might be able to do with his stock at another building, neither he nor any one else could possibly know. Perhaps he might do better and perhaps he might do worse.  It is enough to say that such contingencies are too uncertain and too remote to be tolerated as a source of proof upon which courts and juries could act with any safety.  In Railroad v. Balthaser, 119 Pa. 472, we held that the value of the plaintiff's

land as limestone land is a proper subject of consideration, but not the value of the stone under the road. In Railroad v. Patterson, 107 Pa. 461, we held that the jury cannot take into consideration any supposed loss to the plaintiff of profits in his business, by reason of the appropriation of his property by the railroad company. Said CLARK, J., "such an assessment would be purely speculative, and a rule which justified it would lead to most ruinous results." The same doctrine was held in Railroad v. Eby, 107 Pa. 166.

There are many authorities that the removal of personal property cannot be considered as an item of damages in the taking of real estate. In Lewis on Eminent Domain, 488, it is said, "But the damages to personal property, or the expense of removing it from the premises, cannot be considered in estimating the compensation," citing a number of cases. In Cobb v. Boston, 109 Mass. 309, it was held that, in assessing the value of a leasehold estate, damage to the business of the lessee and its good will is not to be included. The Court said, " The only question was as to the value of his unexpired lease, and not as to the profits of his business or the inconvenience of removing it to some other place." To the same effect is Edmonds v. Boston, 108 Mass. 535. Further references are unnecessary. The first and second assignments of error are dismissed. There is no merit in the third and ninth assignments. The learned court below charged the jury on the subject of interest in precise accordance with the decision of this court in the case of Klages v. Railroad, 160 Pa. 386, where this whole subject was exhaustively reviewed by our Brother WILLIAMS.

The rulings of the court below as to the testimony in relation to sales of particular properties in the neighborhood were in conformity with our most recent decisions, and were therefore free of error. In Railroad v. Patterson, 107 Pa. 461, we held that the market value as a measure of damages for land taken or injured by a railroad company, cannot be ascertained by evidence of particular sales of other properties alleged to be situated similarly to the one in question. Such evidence would introduce collateral issues, and is not admissible in such proceedings. See also Railway v. Vance, 115 Pa. 325, and Curtin v. Nittany V. R. Co., 135 Pa. 20. Of course such evidence may be brought out by the cross-examination of witnesses. In view

of all that was said by the court on this subject in the general charge and in the answers to the sixth, seventh and ninth points of the defendant, and in view of the testimony as to the three properties mentioned in the defendant's eighth point, we think the affirmance of the defendant's eighth point was correct, and therefore the fourth assignment of error is not sustained.

The remaining assignments of error are not pressed in the argument for appellant, and we think they are without merit and hence are not sustained.

Judgment affirmed.