# Miller *v.* Western Allegheny Railroad Company, Appellant.

*Railroads—Eminent domain—Condemnation proceedings—Evidence.*

1. On the trial of an issue to determine the damages for the taking of land for the purpose of a branch railroad where the evidence showed that the damages suffered were chiefly from the operation of the railroad, and that the chief business of the branch was the transportation of coal from lands in the vicinity, it is proper to admit evidence showing the physical extent of the coal vein, that it was small in area and would be soon exhausted.

2. In such a proceeding, where the plaintiff shows that he owned and operated an oil well near the branch line, it is proper to permit the defendant to show that the quantity of oil produced from the well was steadily diminishing.

3. In a proceeding to assess damages for land condemned for the use of a branch railroad, it is improper to permit a witness for the railroad company to express an opinion that the right to use the land for railroad purposes will soon be abandoned.

4. In such a proceeding where it appears that the plaintiff had sold the coal under his land, it is reversible error to compel him upon cross-examination and against the objection of his counsel to testify that he had sold his coal, and had obtained for it a larger price than that received by some of his neighbors.

Argued May 8, 1911. Appeal, No. 143, April T., 1911, by defendant, from judgment of C. P. Armstrong Co., Sept. T., 1909, No. 27, on verdict for plaintiff in case of L. W. Miller v. Western Allegheny Railroad Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Reversed.

Appeal from award of viewers. Before PATTON, P. J.

After the trial when the plaintiff was on the stand he was asked on cross-examination the following questions:

"Q. You know where the Stewart seam of coal is that they are operating? A. Yes, sir. Q. You know this is the summit vein; you know it only appears in the tops of hills? A. Yes, sir. Q. You know it is of very small area?"

Objected to as not cross-examination.

The Court: The objection is overruled, the evidence admitted, and a bill of exceptions is sealed. [1]

"Q. You know that that vein of coal appears in the summits of the hills? A. To the best of my knowledge. Q. Is it not on your farm at all? A. No, sir. Q. What was the production of your well in 1902? A. About three barrels. Q. Will you state what it is producing now?"

Objected to as incompetent and irrelevant.

The Court: I think this is competent, the objection is overruled, the evidence admitted, and a bill of exceptions is sealed. [2]

"Q. What is it producing now? A. A little over two barrels. "Q. How about that, didn't you get a great deal greater price for your coal than others? A. I don't know what the others got. Q. What did you get?"

Objected to as incompetent and irrelevant.

The Court: If followed by evidence that on account of this special location, and the advantage to it that did not accrue to the other properties in that neighborhood, the objection is overruled and a bill of exceptions is sealed. [3]

"Q. How much did you get for your coal? A. $50.00 an acre."

H. H. Bickle, a witness for defendant, was asked this question.

Defendant's counsel propose to prove by the witness on the stand, and by succeeding witnesses, that the claim of Mr. L. W. Miller for damages in this matter, is not sustained by the weight of evidence.

Objected to as incompetent and irrelevant.

Plaintiff's counsel ask for a proposition, and what facts defendant proposes to prove by this witness.

The Court: Ask your question.

"Q. Do you know whether this present site, or this high grade track will be used for any other purposes than to take out the coal in that hill and the Barnhart mine?"

Objected to as incompetent and irrelevant.

The Court: I think the testimony is relevant; the objection is overruled and a bill of exceptions is sealed. [4]

"Q. How long will that side track be used there?  A. It is expected that it will be abandoned sometime between now and the first of the year."

Verdict and judgment for plaintiff for $298.  Defendant appealed.

*Errors assigned* were (1–4) rulings on evidence quoting the bill of exceptions.

*Orr Buffington,* with him *H. H. Goucher,* for appellant.

*J. H. Painter,* for appellee.

OPINION BY HEAD, J., July 13, 1911:

The defendant, in the exercise of its right of eminent domain, had appropriated a portion of the land of the plaintiff and constructed thereon a branch line of its railroad.  After a jury of view had assessed the damages an appeal was taken to the court of common pleas, and from the judgment on the verdict rendered in that trial this appeal was taken.  There was evidence tending to show that the damages suffered by the landowner resulted chiefly from the operation of the railroad under existing conditions rather than from the taking of the strip of land on which it was constructed.  There was also evidence tending to show that the chief business of the branch line was in the transportation of coal from lands in the vicinity of the plaintiff's property.  Against the objection of the plaintiff the court received evidence to show the physical extent of the coal vein there operated and that it was small in area.  The manifest purpose of such testimony was to convince the jury that the coal would soon be exhausted, and as a consequence that the operation of the branch line complained of would not continue for any great length of time.  We think such testimony, directed as it was to physical conditions, was relevant to the inquiry before the court and was therefore properly received.  The first assignment is dismissed.

The line of the railroad as it crossed the plaintiff's land was located within a few feet of the derrick of an oil well operated by the plaintiff from which he derived a certain revenue. Again the learned trial court, over the objection of the plaintiff, permitted the defendant to show that the quantity of oil produced from this well was steadily diminishing. This again was a physical fact, calculated to place before the jury the conditions that actually existed and thus to enable them to arrive at a just conclusion as to the real value of the plaintiff's property and the extent of the injury he suffered. The second assignment is dismissed.

The fourth assignment alleges error in permitting a witness for the defendant to give his opinion as to the length of time during which the company would use its branch line and when it would be abandoned. Of course, any such opinion or estimate of time by the witness would be in no way binding upon the company. Having appropriated the land for railroad purposes, its right was to continue such use indefinitely, and the plaintiff's damages could not fairly be lessened because of the opinion of the witness that the right would be abandoned within a short period of time. But as we understand the record, this testimony, on motion, was stricken out. Whilst such action does not always furnish a complete remedy for the injury done to a party by the receipt of incompetent or inadmissible testimony, there would remain no sufficient cause for a reversal unless it appeared to us that the hurtful impression produced on the minds of the jury by hearing the testimony complained of had not been obliterated by the subsequent action of the court. Whilst therefore we might be unwilling to reverse the judgment upon this assignment alone, as the case must go back for retrial for another reason, we think it proper to declare that the testimony complained of should have been excluded.

The fifth and sixth assignments complain of the charge of the court as to the general lines upon which the jury

were to determine the extent of the damages suffered by the plaintiff. A careful reading of the excerpts on which the assignments are based, and indeed of the entire charge, leads to the conclusion that in the main the learned trial judge proceeded on the correct theory, and we are unable to perceive anything in the extracts specially complained of in the two assignments named that could justly be considered erroneous. These assignments are therefore dismissed.

Upon the cross-examination of the plaintiff he was compelled to testify, over the objection of his counsel, the price at which he succeeded in selling the coal under his own land and that he obtained for it a larger price than that received by some of his neighbors. This fact was permitted to go to the jury and they were subsequently instructed that they might properly consider it in making up their verdict although the plaintiff further testified, and in this he was not contradicted, that at the time he sold his coal the railroad was not there and had not yet been located. It seems to us manifest that the particular price at which the plaintiff was able to sell his coal might depend on many factors other than the location of the railroad. It might be fairly attributed in large part to his own native shrewdness in making a favorable deal; it might have been that the natural location of his property made his tract of coal especially valuable or desirable as compared with other tracts in the same field. There are many other like illustrations that could be offered, all of which point to the propriety of the rule that the selling price of a particular piece of property is not evidence of the general market value with which alone juries are to deal in cases like the one before us.

In Pitts. & Western Railroad Co. v. Patterson, 107 Pa. 461, Mr. Justice CLARKE thus stated the true rule on the subject, viz.: "The location of the land, its uses and products, and the general selling price in the vicinity are the data from which a jury may determine the market value. The price which, upon a consideration of the matters

stated, the judgment of well-informed and reasonable men will approve is the market value. A particular sale may be a sacrifice compelled by necessity, or it may be the result of mere caprice or folly; if it be given in evidence it raises an issue collateral to the subject of the inquiry, and these collateral issues are as numerous as the sales." To the same effect are the cases of Pitts., Va. & Charlestown Railway Co. v. Vance, 115 Pa. 325; Curtin v. Nittany R. R. Co., 135 Pa. 20, and Becker v. Phila. & Reading R. R. Co., 177 Pa. 252.

Applying the principle of these decisions to the case before us we cannot escape the conclusion that the learned trial judge fell into error in admitting the evidence referred to and instructing the jury that they might properly consider the price at which the plaintiff had sold his coal in making up their estimate of the damages sustained by him from the construction and operation of the railroad. The third and seventh assignments are sustained.

Judgment reversed and a venire facias de novo awarded.