# Delaware County Redevelopment Authority v. Carminatti

*Joseph W. deFuria*, for plaintiff.
*Harold L. Ervin, Jr.*, for defendant.

OLMSTED, J., March 13, 1959.—Defendant landowner has filed exceptions to the reports of a board of view. Plaintiff redevelopment authority took defendant's land, consisting of two parcels, under its power of eminent domain. Defendant uses the land as an "automobile graveyard." Defendant offered evidence that there were some 1,400 junked automobiles and 175 tons of automobile parts stored on the premises and that it would cost $8,540 to remove the material to another site. This evidence was received over objection. The reports of the board of view do not indicate what, if any, weight they gave to this evidence in fixing a before and after value,* but they did not allow anything as a separate item of damage. In

---

* The presence of junked cars, or other waste material which the redevelopment authority or any other purchaser would have to clear away, might *reduce* the "before" value.

her exceptions defendant asks that this item be added to the award or that the matter be referred back to the board of view with instructions to determine the relocation costs as a separate item of damage and add that figure to the award.

The Urban Redevelopment Law of May 24, 1945, P. L. 991, 35 PS §§1701-1719, confers numerous specific powers on the authority. The three which are relevant to this issue are:

"(h) To assemble, purchase, obtain options upon, acquire by gift, grant, bequest, devise or otherwise any real or personal property or any interest therein from any person, firm, corporation, municipality or government;

"(i) To acquire by eminent domain any real property, including improvements and fixtures for the public purposes set forth in this act in the manner hereinafter provided; . . .

"(1) To reimburse for their reasonable expenses of removal, the occupants of a redevelopment area who have been displaced as a result of the redevelopment; . . .": 35 PS §1709.

Section 12 of the act, 35 PS §1712, provides that the right of eminent domain may be exercised in the manner provided by law for the exercise of such right by counties. The County Code gives a right to damages for "lands, property or material appropriated, injured or destroyed," and requires the viewers to estimate, determine and assess the damages for the same: The County Code of August 9, 1955, P. L. 323, 16 PS §§2404, 2413. In this case only the lands and buildings are being appropriated; the junk is neither appropriated, injured nor destroyed by the authority.

In Pennsylvania it is established that compensation in an eminent domain case does not include a separate item of removal costs: Becker v. The Philadelphia & Reading Railroad Company, 177 Pa. 252; Shipley v.

Pittsburgh, Carnegie & Western Railroad Company, 216 Pa. 512; Butler Water Company's Petition, 338 Pa. 282.

Defendant, admitting this general proposition, argues that the redevelopment statute specifically gives to the authority power to reimburse removal expenses and that, since it would be unjustly discriminatory for it to pay one man's removal expenses and refuse to pay those of another, it must pay such expenses in all cases. Even assuming, arguendo, the correctness of this proposition, it does not follow that the *jury of view* can or may include such expenses *in a condemnation case*. Whatever the authority can do voluntarily under paragraph (*h*), and whatever it can be compelled to do in a proper suit brought against it under paragraphs (*l*) and (*q*), we hold that the jury of view in this condemnation case could not award compensation for removal costs as a separate item of damage.

This conclusion is supported not only by the syntax of section 9, and by its specific wording, but also by consideration of the language of the entire statute and of the broad functions of the urban redevelopment authority. Neither the title to the act nor the declaration of legislative policy in section 2 indicate any intention to change the law of property damage in condemnation proceedings. The act is part of an overall plan to improve housing conditions by vacating blighted areas. This involves the relocation of the people who live and work in the buildings destroyed. The purpose being to improve the living condition of these people, the act naturally shows a solicitude for their welfare when they are dispossessed. Thus the amendment of May 31, 1955, P. L. 107, provides that the governing body must be "satisfied that adequate provisions will be made to rehouse displaced families, if any, without undue hardship. . .": 35 PS §1710.

To accomplish this end the authority is directed to cooperate with planning and governmental agencies, to make sound relocation plans and, in a proper case, to foot the bill. The purpose of this provision, like the purpose of the whole act, is to alleviate human misery rather than to change established laws of property evaluation.

The power to reimburse the expenses of removal is one of the 26 listed powers, grammatically parallel to the power to invest funds, contract for insurance, conduct investigations and perform a variety of other functions entirely distinct and different from the acquisition or condemnation of property. We find nothing in the act to change the established Pennsylvania rule of damages for property condemned.

*Order*

And now, March 13, 1959, the exceptions of defendant to the reports of the board of view are dismissed.