# Hewitt *v.* Pittsburg, Shawmut & Northern Railroad Company, Appellant.

*Railroads—Eminent domain—Elements of damages.*

Where property is injured by the construction of public works, the owner's loss is measured by the difference in the market value before and after construction; this includes all the elements of depreciation and represents the whole loss. But the separate items are to be considered, not as distinct items of loss but as they affect the market value. These items have been considered in many cases and embrace the diversion of surface water, the invasion of privacy, the deprivation of means of access, the burden of additional fencing, the change of roads, the imminent danger of fire, not resulting from negligence, and like matters which are to be taken into consideration as affecting the market value of a property as a whole. The inquiry is limited as to whether it will be prejudicial or advantageous to the property as such and not to the owner in any special use he may make of it.

*Railroads—Eminent domain—Qualification of witnesses.*

In an action against a railroad company for land damages witnesses are competent who have lived in the immediate neighborhood of the land for a number of years, are owners of land, are well acquainted with the plaintiff's farm immediately before and after the construction of the railroad, and know the location of the land, its uses and products, as well as the general selling price of lands in the neighborhood.

Evidence of particular sales is inadmissible to establish a market value. The general selling price in the neighborhood at the time is the test of value nor is the market value necessarily the price which the land would command in a forced sale by public auction. It is estimated upon a fair consideration of the location of the land, the extent and condition of its improvements, its quantity and productive qualities, and the uses to which it may reasonably be applied taken with the general selling price of lands in the neighborhood at the time.

*Evidence—Witness—Striking out testimony.*

Where a witness has testified as to the value of land, and has been examined and cross examined at length before any objection has been made to his competency, and no new fact is introduced by his testimony which is at most confirmatory of the opinions of others, a refusal to strike from the record his testimony as to the value of the land because of incompetency is not a sufficient cause for the reversal of the judgment.

*Eminent domain—Damages—Interest.*

Interest as such cannot be allowed on land damages, but a reasonable "compensation for delay" or "detention in payment" may be added to the damages.

Argued Nov. 2, 1901. Appeal, No. 134, Oct. T., 1901, by defendant, from judgment of C. P. McKean Co., Dec. T., 1899, No. 191, on verdict for plaintiff, in case of John Hewitt v. Pittsburg, Shawmut & Northern Railroad Company. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Appeal from report of jury of view. Before MORRISON, P. J.

At the trial plaintiff was asked these questions:

" Q. What kind of land is this through which the railroad runs ; is it cultivated land?. A. Yes, sir. Q. How does it lie, as to being level or otherwise ? A. On the lower side of the railroad it is flat and the upper side it is a natural grade up to the road ; a little descending, just enough to run water off. Q. State whether there are any cuts or fills along this road through your farm. A. There are fills ; mostly. Q. About how much ? A. Somewhere about three feet. They say it isn't all filled yet. They have been filling all summer long. Q. What effect does this fill have on the surface water running down ? A. If they do what they propose to do —Q. What effect has it now? A. This spring I couldn't get in any crop. There is a spring there and it ran all over the whole front—I couldn't do nothing ; I came up to them several times."

Objected to.

The Court: He is entitled to show how it is located, and if it does any direct damage to him more than ordinary he is entitled to show it.

Objected to.

The Court: He has a right to describe the situation and what the effect of the railroad is on his land, as affecting the value of his land, compared with what it was before the railroad was put there.

Offered as tending to show the difference in the value of the farm before and since the railroad was constructed ; but not to show any consequential damages, and the plaintiff's counsel also proposes to show that the occupation by the railroad construction frequently set fires on the land of the plaintiff.

Objected to that they can only show what the market value of the land, as a whole, was, before the railroad was there and after it was put there.

The Court: How is the jury to know its value without show-
ing the uses that it is put to and what it is used for? I under-
stand that the plaintiff cannot enhance the value by showing
that he desired to make, or did make some peculiar use of the
land, that made it more valuable to him than it would be to
anyone else; but he can show the general character of the land
and show how much less it is worth with the railroad through
it than without it; I think he has a right to state if the con-
struction of the railroad flooded his land.

Exception sealed for the defendant. [1]

M. W. Heinlein, sworn and examined by Mr. Bouton, testi-
fied as follows:

" Q. Where do you reside? A. Farmers valley. Q. Do
you know the farm owned by the plaintiff? A. Yes, sir.
Q. How long have you known that farm? A. About twenty
years. Q. You are a farmer? A. Yes, sir. Q. Now what in
your judgment is the value of the Hewitt farm with the rail-
road now upon it, less than its value prior to the construction
of the railroad? A. I should think there would be seven or
eight hundred dollars difference. Q. How long have you lived
there? A. About twenty years. Q. How near to the Hewitt
farm? A. Between a quarter and a half mile.

Cross examined by Mr. Richmond:

" Q. You own the farm adjoining this? A. No, sir. Q. Very
near to it? A. No, sir. Q. How far is your farm from Mr.
Hewitt's? A. About a good long mile. Q. It is on the same
road? A. No, sir; my farm is back from the road. Q. Your
father owns a farm near Mr. Hewitt's? A. No, sir. Q. Your
father's estate? A. Yes, sir. Q. Your father's farm then is
very near to Mr. Hewitt's? A. Yes, sir; about a quarter of
a mile or a little over. Q. The land up and down that valley
is much of the same character and value? A. There is more
hill on the farm I live on than on Mr. Hewitt's. Q. Have you
any idea of the present value of farm lands in that vicinity?
A. Not a great deal. Q. Have you any idea of the value of
farm lands in that vicinity a year ago? A. I don't think there
is any difference. Q. Have you any idea of the value of farm
lands in the vicinity of the Hewitt farm now? A. No, sir; I
haven't heard any value on the value of any lands in there."

Objected to the testimony of the witness that he is not com-

petent and defendant's counsel asks that the witness's testimony be stricken out.

The Court: I think in view of the question, and the purpose that he was put on the stand for, and the silence of the defendant's counsel, we have a right to assume that both sides wanted his opinion.

Counsel for defendant asks that the testimony of the witness be stricken from the record.

The Court: In view of the fact that the witness was put on the stand to testify to the amount of damages to this land, and no objection made and no question raised of his competency, we decline to strike out his evidence.

The court charged in part as follows :

They ought to pay Mr. Hewitt exactly what he has suffered in damages, and as has been argued to you by counsel, you may add something to that for the delay in paying it. When they took possession of his land and built their railroad on it, they ought to have given him just compensation, and having brought it into this court and delayed it this length of time, it is proper, after you have arrived at a conclusion of how much damage he sustained, to then increase that such an amount as you think just and proper for the delay in paying it. About one year; which increase should not exceed six per cent ; it might be less, but it ought not to be more than that. You can make it as much less than that as you see fit, but he is entitled to something for the delay in paying him.

If they had sought to save themselves from this and had tendered him an amount which they said was just compensation, before bringing it into court, and he had refused to take it, and they had kept up that tender, he wouldn't be entitled to anything for the delay if he didn't recover more than they offered to pay him ; but this delay is on account of the action of the railroad company. [7]

Verdict for plaintiff for $742, upon which judgment was entered for $600, all above that amount having been remitted. Defendant appealed.

*Errors assigned* were (1–6) rulings on evidence, quoting the bill of exceptions.   (7) Above instructions, quoting them,

*Edwin E. Tait*, with him *Sheridan Gorton* and *Thomas F. Richmond*, for appellant.—The rulings as to the measure of damages were improper: Schuylkill Navigation Co. v. Thoburn, 7 S. & R. 422; Philadelphia Ball Club v. Philadelphia, 192 Pa. 648; Grier v. Homestead Borough, 6 Pa. Superior Ct. 542.

Where a witness testifies without objection, and in the course of his examination his incompetency had been disclosed, defendant would have the right to demand that his testimony be stricken out: Pleasanton v. Nutt, 115 Pa. 266; Grier v. Homestead Borough, 6 Pa. Superior Ct. 542.

*J. W. Bouton*, of *Bouton & Gallup*, with him *Berry & Edgett*, for appellee, cited as to the competency of witnesses: Curtin v. Nittany Valley R. R. Co., 135 Pa. 20; Penna. etc., R. R. & Canal Co. v. Bunnell, 81 Pa. 414; Jones v. Erie & Wyoming Valley R. R. Co., 151 Pa. 30; State Line R. R. Co. v. Playford, 14 Atl. Repr. 355; Beck v. Penna., etc., R. R. Co., 148 Pa. 271; Galbraith v. Phila. Co., 5 Pa. Superior Ct. 178.

Cited as to the element of damages: Ritchie v. Pittsburg etc., R. R. Co., 31 P. L. J. 424; Richards v. Citizens Nat. Gas Co., 130 Pa. 37; Penna. Schuylkill Valley R. R. Co. v. Ziemer, 23 W. N. C. 423; Getz v. Phila. & R. R. Co., 15 W. N. C. 357; Watson v. Pittsburg & Connellsville R. R. Co., 37 Pa. 469; East Penna. R. R. Co. v. Heister, 40 Pa. 53; Pittsburg, etc., R. R. Co. v. Rose, 74 Pa. 362; Curtin v. Nittany Valley R. R. Co., 135 Pa. 20.

OPINION BY ORLADY, J., February 14, 1902:

Where property is injured by the construction of public works the owner's loss is measured by the difference in the market value before and after construction; this includes all the elements of depreciation and represents the whole loss. But the separate items are to be considered, not as distinct items of loss but as they affect the market value: Shano v. Fifth Ave., etc., Bridge Co., 189 Pa. 245; Hamilton v. Pittsburg, etc., Railroad Co., 190 Pa. 51. These items have been considered in many cases and embrace the diversion of surface water, the invasion of privacy, the deprivation of means of access, the burden of additional fencing, the change of roads, the imminent danger of fire, not resulting from negligence, and like matters which are

to be taken into consideration as affecting the market value of
a property as a whole.   The inquiry is limited as to whether it
will be prejudicial or advantageous to the property as such and
not to the owner in any special use he may make of it: Dawson
v. Pittsburg, 159 Pa. 317 ; Reyenthaler v. Philadelphia, 160
Pa. 195 ; Struthers v. Phila., etc., R. R. Co., 174 Pa. 291.

It was conceded on the trial that the construction of the de-
fendant's railroad through the plaintiff's farm was not a benefit
or advantage to the farm or its owner, and that the plaintiff
was entitled to a verdict for some amount.   The evidence which
affects the first, third, fourth, fifth and sixth assignments of er-
ror was properly received.   These witnesses had lived in the
immediate neighborhood for a number of years, were owners of
land, and were well acquainted with the plaintiff's farm, imme-
diately before and after the construction of the railroad and
knew the location of the land, its uses and products as well as
the general selling price of lands in the neighborhood.   They
were not experts, but testified from personal knowledge of the
location, condition and quality of the land as affected by the
location of the railroad.   Evidence of particular sales is inad-
missible to establish market value.   The general selling price
in the neighborhood at the time is the test of value.   " A par-
ticular sale may be a sacrifice, compelled by necessity, or it may
be the result of mere caprice or folly."   Nor is the market value
necessarily the price which it would command in a forced sale
by public auction: it is estimated upon a fair consideration
of the location of the land, the extent and condition of its im-
provements, its quantity and productive qualities and the uses
to which it may reasonably be applied, taken with the general
selling price of lands in the neighborhood at the time.   The
price which, upon full consideration of the matters stated, the
judgment of well informed and reasonable men will approve may
be regarded as the market value: Reading & Pottsville R. R. v.
Balthaser, 126 Pa. 1 ; Long v. Harrisburg & Potomac R. R. Co.,
126 Pa. 143.   The market value of land is in a sense uncertain ;
it cannot be determined as are securities on stock exchange
transfers.   It depends on many conditions which affect the judg-
ment and opinion of a witness.   The value of a witness's opinion
will depend upon the extent of his familiarity with the surround-
ing property and prices asked and paid for like lands in the vicin-

ity.   He may hesitate in making an estimate of the value, he may say that he does not know certainly, but, after due deliberation, may be able to express an opinion or come to a conclusion, the accuracy, of which, under all the evidence, is of course wholly for the jury.   Such a conclusion of fact is admissible in evidence, as the best evidence of which such a question is ordinarily susceptible : Pittsburg, Virginia & Charleston Ry. Co. v. Vance, 115 Pa. 325 ; Curtin v. Nittany Valley R. R. Co., 135 Pa. 20 ; Jones v. Erie & Wyoming Valley R. R. Co., 151 Pa. 30 ; Becker v. Philadelphia and Reading Terminal R. R. Co., 177 Pa. 252.

The market value of lands is not a question of science and skill upon which only an expert can give an opinion and whether the opinion has proper ground to rest upon, or is mere conjecture, or is the result of prejudice, can be disclosed on cross-examination.   It is difficult to frame a rule to fix the market value of property which the owner does not desire to sell, and the common sense judgment of intelligent and disinterested witnesses who are familiar with the property and its surroundings is more likely to determine a fair price for the property than the expert or promoter who is on the ground for a special purpose.

The second assignment is without merit.   The witness had been examined and cross-examined at length before any objection was made.   No new fact was introduced by his testimony which was at most confirmatory of the opinion of others. The testimony was admissible under Dawson v. Pittsburg, 159 Pa. 317, in which case the Supreme Court says in regard to similar evidence, that a man may know the effect on the relative value without being able to fix the actual market price.   Such evidence is admissible at least in corroboration of others who may give definite figures.   Refusing to strike from the record such harmless testimony is not a sufficient cause for reversal of the judgment.   It was not claimed that the plaintiff's land was used or intended to be used for any special, peculiar or particular use different from other farm lands.   The owner lived on and tilled it; he raised the usual grains and stock that his neighbors raised; it was his home.   It was so regarded by the parties, all the witnesses and the court and the answer to the defendant's eighth point was correct.   The damages to be assessed in such a proceeding are intended to compensate the

owner not only for the original taking for railroad purposes, but the permanent maintenance on the lines as laid on the ground and its operation in a lawful manner.

There is no merit in the seventh assignment. Interest, as such, should not be allowed but a reasonable "compensation for delay" or "detention in payment" may be added to the damages under authority of Richards v. Citizens Nat. Gas Co., 130 Pa. 37, and Penna. Schuylkill Valley R. R. Co. v. Zeimer, 23 W. N. C. 423.

The case was fairly submitted to the jury and the verdict in the light of the testimony is a very reasonable one.

The assignments of error are overruled and the judgment is affirmed.