## Beals v. Centre County.

*N. B. Spangler* and *Ivan Walker*, for plaintiff.
*Arthur C. Dale* and *Ellis L. Orvis*, for defendant.

FLEMING, P. J., Jan. 14, 1930.—The jury has awarded the plaintiff the sum of $500 as damages to her land, caused by the relocating and building of the State highway, running through Bald Eagle Valley, from Bellefonte to Tyrone. The jury also awarded the plaintiff the further sum of $161.10 as compensation for the detention of moneys found to be due her from April 1, 1925, to Sept. 19, 1929, the date of the verdict. The defendant seeks a new trial and has assigned as reasons therefor the following:

1. The verdict of the jury is excessive.

2. That the verdict of the jury was against the weight of the evidence.

3. That the item of interest in the sum of $161.10 should not have been awarded the plaintiff, for the reason that the delay in this case was caused by reason of plaintiff's excessive demand for damages, which delay on the part of the defendant was fully justified by the award of the jury, in its award of the principal sum of the damages.

In approaching our consideration of this motion we begin with two conclusions in which we are certain all parties will agree, to wit: (1) That if the verdict of the jury was excessive, it was excessive only to the extent of the sum awarded as damages for delay in payment; and (2) that if the verdict of the jury was against the weight of the evidence, it was only against the weight of such evidence, in so far as the allowance of any compensation for delay is concerned. This brings us, therefore, to a consideration of the third reason assigned, and leaves for our discussion and determination the sole question, viz., Is the plaintiff entitled to the sum of $161.10 awarded her as compensation for delay in payment?

It appears to be a well settled rule that while interest, as such, is not allowed on damages in condemnation proceedings, it is, nevertheless, proper for the jury to consider the lapse of time between the taking of the land and the time of the trial, in making up the damages for which to render a verdict: Hewitt *v.* Railroad Co., 19 Pa. Superior Ct. 304; Klages *v.* Phila. & R. T. Co., 160 Pa. 386; Penna. S. V. R. R. Co. *v.* Ziemer, 124 Pa. 560. It

is, further, clearly the rule that when the plaintiff by grossly excessive and unreasonable demands makes the delay of payment imperative on the part of the defendant, and thereby causes such defendant to await a verdict before making such payment, no compensation for delay can be recovered by the plaintiff.

In Richards v. Citizens Natural Gas Co., 130 Pa. 37, Justice Mitchell says: "Interest is recoverable of right, but compensation for deferred payment in torts depends on the circumstances of each case. The plaintiff may have set his damages so inordinately high as to have justified the defendant in refusing to pay, or in other ways the delay may be plaintiff's fault. . . . In such cases the jury probably would not, and certainly ought not to make the allowance."

We must, therefore, carefully scan the circumstances of the instant case in determining the question before us. As an aid or guide therein, let us first consider what has heretofore been said in cases of like nature.

In Stevenson v. Coal Co., 203 Pa. 316, 333, Justice Dean says: "Here, the plaintiff in his statement claimed specifically for the deposit of culm and the interruption of business at mill, $75,000; then, further, for the pollution of the stream and the destruction of about twenty acres of land for agricultural purposes, $25,000, making altogether $100,000. Perhaps the mere averments in the statement would not of themselves be sufficient to warrant the belief of an extortionate demand, for it is a common practice in pleading to fix the amount claimed at a higher sum than the plaintiff is willing to accept or expects to get, but here the unconscionable demand in the statement is followed by a like demand at the trial. The two sons of plaintiff, Charles and William Stevenson, were both called by plaintiff as witnesses and each computed the damages at $100,000. So incredible was their testimony and so exorbitant the demand that the court felt compelled to instruct the jury practically to disregard both. Beyond question, the plaintiff set his demand inordinately high; defendants must resist by litigation with its consequent delays. Therefore, they were excusable in not promptly paying, and should not be subject to a penalty for non-payment. The jury should have been peremptorily instructed that, under these circumstances, damages for detention, not to exceed legal interest, should not be allowed; that they had no discretion in the matter." In this case the jury had returned a verdict for plaintiff in the sum of $21,000.

In Pierce v. Lehigh Valley Coal Co. (No. 2), 232 Pa. 170, Justice Mestrezat says: "The facts fully warranted the court in disallowing the damages awarded for the detention of the payment of the plaintiff's claim. As appears by the evidence and as stated by the court, the claim was for $50,000, and it was strongly insisted upon in its entirety at the trial. At no time did the plaintiff offer to reduce the claim or to accept any smaller sum than his original demand. The fact that the verdict in his favor was for only $6200 shows that the demand was excessive, extortionate and unreasonable and one which the defendant was fully warranted in contesting. The officers of the defendant company would manifestly not have been justified in paying the claim. Had they done so, they would have failed to perform their duty and would have been responsible to the company."

In Trustees of Kingston v. Lehigh Valley Coal Co., 241 Pa. 481, Justice Elkin says: "Appellant also contends that interest should have been allowed by way of compensation for detention. The learned trial judge decided this question against the plaintiff, and very properly so. The demand was grossly

64

excessive and unreasonable, as is shown by the verdict returned. The demand was for more than $2,000,000, while the verdict was for a little over $100,000."

In Rea *v.* Pittsburg, etc., R. R. Co., 229 Pa. 106, cited by the plaintiff in support of her contention that, inasmuch as defendant failed to show an offer of settlement at any figure or any indication that reasonably lower demands would have met with payment, we find the court quoting with approval the charge of the trial judge as follows: "It is for you to say in the exercise of your sound discretion whether the parties are entitled to compensation for delay in receiving their money. That amount you may give or you may not, just as you conclude, . . . remembering that as a general principle, where there has been delay which is not the fault of the plaintiff, and he has been kept out of his money, for the time lost the jury could give compensation by way of damages. . . . When you have fixed the market value at so much a foot, compare that with Mr. Rea's price, and if you are fairly of the opinion and come to a fair and honest conclusion that the difference between the price you fix and the valuation placed by Mr. Rea was so great that you would say that it was an extortionate demand, that it was an inordinate demand, so that the officers of the railroad company were justified in contesting, . . . then it would be your duty, and I so instruct you, to refuse to give any damages for delay in payment. . . . But if . . . this was merely an honest difference of opinion, . . . you could give compensation for delay." In this case plaintiff's claim was $1,056,000. At the first trial the verdict was for $616,000 principal and $159,133.33 compensation for detention. A new trial was then granted on motion of the defendant, whereat a verdict was returned for $616,000 principal and $149,893.33 compensation for delay. The defendant company had taken actual possession of plaintiff's lands in 1903 and had ever since (until April 5, 1909) enjoyed whatever revenues there were to be derived therefrom.

Let us consider, in the above cited cases, the relation of sums recovered to sums claimed. In Stevenson *v.* Coal Co., 203 Pa. 316, the recovery was 21 per cent. of the amount claimed. In Pierce *v.* Lehigh Valley Coal Co. (No. 2), 232 Pa. 170, the recovery was approximately 12½ per cent. of the amount claimed. In Trustees of Kingston *v.* Lehigh Valley Coal Co., 241 Pa. 481, the recovery was but 5 per cent. of the amount claimed. In the instant case the recovery was 20 per cent. of the amount claimed, while in Rea *v.* Pittsburg, etc., R. R. Co., 229 Pa. 106, the recovery of principal was 58⅓ per cent. of the amount claimed.

It is true that the record is silent as to any offer of settlement made by defendants or of any indication that defendants would have paid a lesser sum than the sum demanded. It is likewise true that the record is silent as to any offers on the part of the plaintiff or of any indication that she would have accepted a lesser sum than the sum demanded. We cannot apply an omission on the part of the defendants to the benefit of the plaintiff when the same omission occurs on the part of the plaintiff, especially since the burden was on the plaintiff to prove that which she sought to recover by a fair preponderance of the evidence. We must likewise consider that the defendant is the County of Centre, represented by a board of county commissioners, upon whom repeated demands are made for claims similar to that of the plaintiff, and who must, therefore, scrutinize more carefully than an individual, or even a private corporation, and be certain that so much of the public moneys as is paid out is but enough, and only enough, to properly reimburse any individual whose lands have been taken or who has suffered damages in any other manner. It is proper, also, that we should consider, as has been pointed out by defendant's counsel, that the defendant herein did not actually take plaintiff's

land, nor was it *per se* so vested with any discretion as to where or how much of such land was to be taken. While the established rule as to compensation for delay in payment applies to defendants of this sort, it is plain from these conditions that such rule should not be construed as strictly in cases of this sort as where the defendant is an individual or a private corporation vested with full discretionary powers.

Let us now consider briefly the contentions of plaintiff and defendant as shown by the estimates of value placed upon the plaintiff's real estate before the taking and after such.

The plaintiff herself placed the value of the property before the taking at $4000 and after the taking at $2000, thus estimating her damages at $2000. Plaintiff's witness, Isaac Holt, fixed plaintiff's damages at $1500; H. K. Mattern at $1000; Kyle Alexander at $1600; Michael Murphy at $2000; W. H. Dando at $2000; Ruben Alexander at $1300, and George Gill, an aged gentleman, after reconsidering his earlier testimony, at $2000.

The witnesses called on behalf of the defendant were Charles Meyers, who fixed plaintiff's damages at nothing more than the actual value of the strip of land taken for the road, or, as he estimated it in dollars and cents, $400 to $500; and George Fink, who testified that plaintiff's land was worth more after the taking than before; his estimate of the value before the taking being fixed at $1650.

It will thus be observed that the average damage claimed by plaintiff and her witnesses was $1600, while the only witness for defendant who expressed an opinion that plaintiff was damaged found such to be $500, the sum awarded by the jury.

Was this a fair difference of opinion, or was it an exorbitant and unconscionable demand on the part of the plaintiff? In our charge to the jury we said: "Until that value has been definitely ascertained (referring to difference in market value before and after the taking), it is called damages, not a debt due, and when ascertained it relates back to the time of the taking, and the owner is entitled to compensation for delay in payment, unless it is shown to the contrary." Further, in the next paragraph we spoke in such a manner (now that we have considered our words) as to reasonably lead the jury to believe that they must award compensation for delay if they found for the plaintiff in any sum. Further, we did not fix the measure of such compensation as a sum "not to exceed" the legal rate of interest, but spoke as if the legal rate of interest was a fixed measure of such compensation for delay. Such was clearly error and undoubtedly prejudiced the defendant in the matter of damages for delay in payment. We should have charged more explicitly, as did the trial judge in Rea *v.* Pittsburg, etc., R. R. Co., 229 Pa. 106, cited by the plaintiff, thus permitting the jury to decide whether or not the demands of the plaintiff made and persisted in at the trial were so unreasonable, exorbitant and unconscionable as to justify the defendant in delaying payment.

While concluding definitely that our charge was clearly in error in failing to permit the jury to pass upon this last stated question preliminarily to awarding damages for delay in payment, and in incorrectly stating the measure of such damages to be applied, in the event the jury should so find, we are further of the opinion, in view of the cases cited above showing percentages of amounts claimed which were recovered, that were the matter to be so properly submitted and an award of compensation for delay made, that we should be compelled to render a judgment *non obstante veredicto*, upon a proper motion, for such sum found as compensation for delay. No good purpose will

66

be served, therefore, at this time by the mere allowance of a new trial without conditions, thus compelling the parties litigant to again submit the matter to a jury. We shall, therefore, enter the following conditional

### Decree.

And now, Jan. 14, 1930, after due consideration, the court sustains the first reason assigned by defendant for a new trial and finds the verdict of the jury to be excessive in the sum of $161.10; if the plaintiff shall, within ten days from this date, accept the sum of $500 and shall agree that judgment be entered in favor of the plaintiff and against the defendant as of the date of the verdict of the jury herein, to wit, Sept. 19, 1929, the rule for new trial shall be dismissed; otherwise to be made absolute.

From S. D. Gettig, Bellefonte, Pa.